**In re AEROSMITH DENTON CORPORATION, Debtor.**

**MERCANTILE NATIONAL BANK AT DALLAS, Plaintiff,**

v.

**AEROSMITH DENTON CORPORATION, Defendant.**

Bankruptcy No. 383–00278–G.
Adv. No. 383–0429.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

June 21, 1983.

Russell L. Munsch, Dallas, Tex., for plaintiff.

Richard E. Ward, Seagoville, Tex., for defendant.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

Mercantile National Bank at Dallas filed complaint for sanctions against the debtor, alleging that the debtor unlawfully used cash collateral after a Chapter 11 petition was filed without first having obtained consent of the secured party or authorization from the Court. Additionally the complaint seeks sanctions against the attorney who represents the debtor by the bank's contention that the attorney knowingly, willfully and deliberately advised the debtor to so unlawfully use cash collateral. The following summary constitutes findings of fact and conclusions of law.

Aerosmith Denton Corporation filed a voluntary petition for order for relief under Chapter 11 of the Bankruptcy Code on February 25, 1983. On April 15, 1982, and on at least two occasions after that date and prior to the filing of the Chapter 11 petition, the debtor executed notes to Mercantile National Bank at Dallas and secured those notes with a security interest in, among other property, all of the debtor's accounts receivable and contract rights and all cash proceeds thereof. The bank's perfected security interest in the prepetition accounts receivable and proceeds is not challenged.

On April 5, 1983, approximately five weeks after the Chapter 11 petition was filed, the bank filed complaint to terminate stay, to provide adequate protection and for other relief. At the preliminary hearing before Judge Gandy on April 20, 1983, the evidence reflected that in the period since the Chapter 11 petition was filed the debtor had collected $13,444.24 from those prepetition accounts receivable, that it had commingled those cash proceeds in a single debtor-in-possession checking account where there were other monies on deposit, and that the proceeds from the accounts receivable thus lost identity. Judge Gandy enjoined the debtor from further collection of prepetition accounts receivable and ordered the debtor to turn over to the bank all prepetition accounts receivable. The bank seeks a replacement lien on the debtor's postpetition accounts receivable to secure the $13,444.24 in cash proceeds which it contends were unlawfully used by the debtor, an administrative priority claim under § 507(b) of the Code and imposition of civil or criminal penalties upon the debtor and counsel for the debtor.

The debtor opposes all of the requested relief. First it contends that it did not use "cash collateral" of the bank and supports that argument with the contention that the definition of "cash collateral"[1] in § 363(a) of the Code does not include accounts receivable. Further, debtor argues that § 9.306(d)(4) of the Tex.Bus. & Comm.Code,

---

1. § 363(a) of the Code defines "cash collateral" as follows:

    (a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest.

is nonbankruptcy law which limits any potential recovery by the bank to proceeds generated *prior* to the filing of the bankruptcy petition.

In defining cash collateral the drafters of the Code adopted the Senate version rather than the broader House concept of "soft collateral" which would have included also inventory, accounts, contract rights, general intangibles, and chattel paper. By adoption of the Senate version the Code effectively removed limitations that were placed on the use, sale, or lease of those excluded items. 124 Cong.Rec. 11,093 (Sept. 28, 1978); S 17,409 (Oct. 6, 1978). Thus, if one looked no further, it might appear that a trustee or a debtor-in-possession would be authorized, pursuant to § 363(c)(1), to use or sell accounts receivable in the ordinary course of business without notice and hearing.

However, § 552 of the Code also must be considered for its impact on the issue of the existence of a security interest on proceeds which a debtor receives postpetition. Section 552(a) provides, as a general rule, that "after acquired" property of the estate is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case in bankruptcy. That general rule is subject to the exceptions set forth in § 552(b) which provides, in relevant part:

> (b) . . . [I]f the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such agreement extends to property of the debtor acquired before commencement of the case and to proceeds . . . of such property, then such security interest extends to such proceeds . . . acquired by the estate after the commencement of the case *to the extent provided by such security agreement and by applicable nonbankruptcy law,* except to the extent that the Court, after notice and hearing and based on the equities of the case, orders otherwise." (emphasis added).

In these proceedings the security devices specifically included "proceeds." However, debtor contends that relevant nonbankruptcy law limits the bank's lien in proceeds generated by the prepetition accounts receivable to cash collected or received by the debtor within ten days before institution of the bankruptcy proceedings. Specifically, debtor relies on § 9.306(d)(4), Tex.Bus. & Comm.Code, which becomes operative on the institution of bankruptcy proceedings by or against the debtor:

> "(d) In the event of insolvency proceedings . . . , a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:
>
> \* \* \* \* \* \*
>
> (4) in all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this Subdivision (4) is
>
> (A) subject to any right of setoff; and (B) limited to an amount not greater than the amount of any cash proceeds *received by the debtor within ten days before the institution of the insolvency proceedings* less the sum of (1) the payments to the secured party on account of cash proceeds received by the debtor during such period to which the secured party is entitled under Subdivision (1) through (3) of this subsection (d)." (emphasis added).

Debtor insists that since the monies against which the bank claims a security interest were commingled with other "proceeds" upon their deposit in the debtor-in-possession checking account, the operation of § 9.306(d)(4) is triggered. Since the subject proceeds were received *after* the filing of the Chapter 11 petition, and not within the ten days next preceding the petition, the debtor argues that the bank is left with no security interest in proceeds.

■ Debtor's argument, while imaginative, is rejected. Acceptance of that theory would have a chaotic effect upon existing liens on property of the type customarily taken by lenders to operating businesses. The drafters of the Code most certainly had other objectives in mind. *See, e.g. 4 Collier*

on Bankruptcy § 552.02, pp. 552–4 and 552–5, (15th ed. 1982), including also footnote 2, where the author suggests that the phrase "to the extent provided by such agreement and by nonbankruptcy law" was in inserted in § 552(b) primarily to insure that the secured party retain his lien in proceeds which are acquired after commencement of the case. While § 9.306(d)(4) of the Tex. Bus. & Comm.Code can be construed to speak in terms of the date the petition is filed, § 552(b) of the Code operates to continue the claim of the secured creditor to proceeds generated postpetition from collateral such as accounts receivable. *See* White and Summers, *Uniform Commercial Code,* p. 1017 (West Publishing Co.), 2nd edition 1980.

■ Therefore I have concluded that the debtor's use of $13,444.24 in proceeds collected postpetition from prepetition receivables constituted use of "cash collateral" without the requisite consent of the creditor bank or authorization of the court after notice and hearing.

Next debtor argues that even if determination is made that he has used "cash collateral" without complying with the provisions of § 363(c)(1) there are no sanctions which may be applied, because Title 11 is silent regarding a remedy for such failure to comply. It contends that the provisions of 364 which govern the obtaining of credit or incurring of debt and establishing priorities for a creditor has no application because the debtor neither incurred a debt nor obtained credit.

■ It is true that there are no apparent provisions of the Code which specifically provide sanctions for the failure of the debtor to comply with "cash collateral" requirements. However § 105(a) of the Code gives to the Bankruptcy Court the power to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. Regardless of debtor's argument that § 105 was not intended to confer the power to create lien rights the Court does have an obligation to carry out the intent of Congress in its enactment of the Bankruptcy Code. As mentioned above

the continuation of lending transactions between the business community on the one hand and lending institutions on the other require that liens negotiated in good faith and for which full consideration has been given must be protected. Adoption of the theory advanced by the debtor that there are no applicable sanctions, so that a valid lien of a creditor is recognized by the Court but both the Court and the creditor are powerless to preserve and protect that lien after bankruptcy has been initiated, will result in anarchy. That cannot be the result intended by Congress. Therefore I have interpreted § 105(a) of the Code as giving to the Court the power and the duty to do those things which are reasonably required to protect the Court's jurisdiction and to carry out the intent of Title 11. Specifically, I have interpreted that section as giving to the Court the power to grant to Mercantile National Bank a replacement lien against postpetition accounts receivable to secure the sum of $13,444.24 in proceeds against which the bank had a lien, but which were unlawfully used by the debtor after the Chapter 11 case was filed. To the extent, if any, that the replacement lien does not fully protect the bank for the $13,444.24 obligation, the bank also shall have a priority administrative claim.

I did not preside at the initial hearing on April 20, 1983, when Judge Gandy entered his injunction order. Thus I have no information, other than the statements contained in the briefs of the parties and those advanced at oral argument on June 1, 1983, as to whether the debtor knowingly, willfully and contumaciously used the cash collateral with the deliberate intent to deprive the bank of its collateral or whether there was good faith ignorance on the part of debtor and his counsel. Thus, on the record I am hesitant to impose either additional civil or criminal sanctions on the debtor or on counsel, particularly where, as here, the law in the past has been unsettled. However, the law should now be settled in this court—proper sanctions can be imposed against those responsible for use of cash collateral after a Title 11 case has been

filed when there has been no compliance with § 363(c)(2).

It is, therefore, ORDERED by the Court that:

1. Mercantile National Bank at Dallas, be, and it is hereby, granted a replacement lien against the debtor's postpetition accounts receivable to secure $13,444.24 in cash collateral unlawfully used by the debtor after the chapter case was filed;

2. The replacement lien in favor of Mercantile National Bank at Dallas above provided be, and it is hereby, supplemented with a priority administrative claim; and

· 3. Imposition of additional civil or criminal sanctions against the debtor and against debtor's counsel for unlawful use of cash collateral be, and it is hereby, presently denied without prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.