**In re UNITY FOODS, INC., Debtor.**

**In re UNITY NATURAL FOODS OF ROSWELL, INC., Debtor.**

**In re J.A.T. LTD., INC., Debtor.**

**Gus H. SMALL, Jr., Trustee of Unity Foods, Inc., Plaintiff,**

**v.**

**COLLEGEDALE DISTRIBUTORS; Union National Bank; Cerniglia Produce Company, Inc.; and Joel Tomaselli, Defendants.**

**Bankruptcy Nos. 83–01728A, 83–01729A and 83–01730A.**
**Adv. No. 85–0272A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

July 1, 1987.

---

**10.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

Gus H. Small, Jr., Mark S. Marani, Zusmann, Small & White, Atlanta, Ga., for plaintiff.

Jay E. Loeb, Atlanta, Ga., for Joel Tomaselli.

## ORDER

W.H. DRAKE, Jr., Bankruptcy Judge.

This adversary proceeding was initiated by the Trustee's complaint to determine the validity, priority, and extent of liens attaching to the proceeds obtained upon the Court-approved sale of the assets, including certain inventory, of the above-referenced debtors. Pursuant to this Court's Order following the pre-trial conference in this proceeding, two defendants, Cerniglia Produce Company, Inc. and Collegedale Distributors, were paid portions of the proceeds held by the Trustee in satisfaction of their claims to the funds, which claims arose from post-petition security interests approved by the Court for inventory sold to the debtors-in-possession. The adversary proceeding is now before the Court on the Trustee's motion for summary judgment against one remaining claimant/defendant, Joel Tomaselli. Tomaselli's counterclaim and answer to the Trustee's complaint broadened the scope of this proceeding by asking the Court to determine the extent of his interest in other property of the estate of these debtors beyond the funds held by the Trustee. The following facts are not in dispute.

The debtors, Unity Foods, Inc., Unity Natural Foods of Roswell, Inc., and J.A.T. Ltd., Inc. (hereinafter collectively referred to as "Unity"), filed their Chapter 11 petitions on April 11, 1983. At that time, First Georgia Bank ("FGB") held the only outstanding security interest in Unity's accounts, furniture, existing and after-acquired equipment, inventory, and proceeds thereof.

Tomaselli was Chairman of the Board and chief operating officer of Unity and, as such, was a person in control over all aspects of Unity's affairs and operations while Unity was operating as debtors-in-possession. Tomaselli's co-shareholder, Allen Tenenbaum, was president of Unity and chief financial officer.

Tomaselli had guaranteed Unity's indebtedness to FGB and had pledged a lien on certain real property. This property was sold on April 29, 1983, to satisfy FGB's claim pursuant to Tomaselli's obligation as guarantor, and Tomaselli was assigned all of FGB's rights against Unity on Unity's note and security agreement.

From the time these bankruptcy cases were filed, Unity did not segregate cash collateral but, instead, used cash collateral without the authorization of this Court. Also, Tomaselli allowed Unity to sell inventory which had been acquired prior to filing bankruptcy and to use the cash proceeds thereof.

In a sale and leaseback arrangement executed on October 24, 1983, Tomaselli expressly released his security interest in Unity's equipment, furniture, and fixtures, which property was sold to Elizabeth Cork and leased back to Unity. Tomaselli asserts that he waived his security interest in this collateral with the understanding that his interest would attach to the proceeds of the sale.

Plaintiff, Gus H. Small, Jr., was appointed Trustee in these cases on September 7, 1984. On December 19, 1984, the Trustee sold Unity's remaining assets pursuant to a Court-approved sale for $55,872.00. Following the payments mentioned earlier to two of the defendants in this adversary proceeding, the Trustee held, as of December 31, 1986, the sum of $21,013.02 in an interest-bearing account, which sum constitutes the remaining proceeds of the sale.

■ Since Tomaselli claims his security interest as assignee of FGB, a determination of the extent of his lien must begin with an analysis of FGB's position. At the time of the filing of these bankruptcy cases, FGB's security interest would ex-

tend, first of all, to inventory on hand at the time of the filing, and to certain proceeds of inventory sold prior to filing. Any inventory acquired by Unity after the filing of the petitions would not be subject to FGB's security interest, pursuant to 11 U.S.C. § 552(a).

The extent of a secured party's interest in proceeds acquired from a debtor's prepetition sale of collateral is governed by O.C.G.A. § 11–9–306(4), which provides:

(4) In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:

(a) in identifiable non-cash proceeds and in separate deposit accounts containing only proceeds;

(b) in identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings;

(c) in identifiable cash proceeds in the form of checks and the like which are not deposited in a deposit account prior to the insolvency proceedings; and

(d) in all cash and deposit accounts of the debtor in which proceeds have been commingled with other funds, but the perfected security interest under this paragraph (d) is

(i) subject to any right to set-off; and

(ii) limited to an amount not greater than the amount of any cash proceeds received by the debtor within ten days before the institution of the insolvency proceedings less the sum of (I) the payments to the secured party on account of cash proceeds received by the debtor during such period and (II) the cash proceeds received by the debtor during such period to which the secured party is entitled under paragraphs (a) through (c) of this subsection (4).

O.C.G.A. § 11–9–306(4).

Under subsection (4)(d)(ii), when a debtor has commingled proceeds of collateral with other cash or in a deposit account, the ceiling on the secured creditor's recovery from the account is the amount of cash proceeds received by the debtor within the ten days prior to the filing of the petition, regardless of whether such proceeds were actually deposited in the account. *See* 2 G. Gilmore, *Security Interests in Personal Property* § 45.9 at 1338 (1965); White and Summers, *Uniform Commercial Code* § 24–6 at 1014–1017 (2nd ed. 1980).

Tomaselli asserts that Unity's records show inventory sales proceeds of $94,125.63 in the ten days preceding the commencement of the Chapter 11 cases and that one of the debtor's bank accounts showed a balance of $43,813.30 as of the April 11, 1983 date of filing. Assuming this assertion to be true, FGB would have had a security interest in this deposit account to the extent of FGB's claim of $27,134.67, either by virtue of O.C.G.A. § 11–9–306(4)(a), if the account contained only FGB's proceeds, or under subsection (4)(d)(ii) if the account contained commingled funds.

In addition to its interest in this deposit account representing proceeds received by the debtor pre-petition, FGB could also claim an interest pursuant to 11 U.S.C. § 552(b) in any identifiable post-petition proceeds received by the debtor for sales of inventory in existence at the time of filing, and FGB, or Tomaselli as its assignee, could have sought adequate protection before Unity used any of such cash collateral in its operations. However, this was not done in this case, and Unity, under Tomaselli's control and with Tomaselli's knowledge, dissipated the deposit account representing pre-petition proceeds and apparently also used all of the post-petition proceeds of pre-petition inventory in conducting its business.

The funds now in the hands of the Trustee do not represent proceeds of any of Tomaselli's collateral. All inventory sold by the Trustee had been acquired post-petition and was, therefore, not subject to Tomaselli's interest. Also, all of Unity's equipment and furniture was sold at an earlier date to Elizabeth Cork, with the proceeds of such sale used by Unity in its

operations. Thus, Tomaselli does not have a security interest in the funds obtained by the Trustee from the sale of Unity's assets on December 19, 1984.

 Apparently recognizing that there is nothing remaining in these estates to which his security interest attaches since the debtors have disposed of all of his collateral and used all the proceeds thereof, Tomaselli asks the Court to grant him a replacement lien on the funds held by the Trustee because of the debtors' "unlawful" use of Tomaselli's cash collateral in violation of 11 U.S.C. § 363(c)(2). Such a replacement lien has been granted to an innocent creditor whose collateral was used without obtaining its consent or court approval in *In re Aerosmith Denton Corp.*, 36 B.R. 116 (Bankr.N.D.Tex.1983). Such equities in favor of the creditor are not present here where Unity used Tomaselli's cash collateral with Tomaselli's knowledge and, in fact, under Tomaselli's control. Also, prior to the assignment of FGB's rights, Unity was using FGB's, not Tomaselli's, cash collateral without Court authorization or FGB's consent, and Tomaselli, as a person in control of the debtors, should not benefit from such use of FGB's collateral.

As to Unity's equipment and furniture, Tomaselli released his lien on this property when it was sold to Elizabeth Cork and did not specifically retain a lien in the proceeds of the sale, which proceeds were, in any event, used by Unity prior to the time when Tomaselli first sought adequate protection. A portion of the funds now held by the Trustee represents the proceeds of the sale of the debtors' interest in the leases of such equipment, but they do not constitute proceeds of the disposition of the equipment itself.

Because there are no funds in the estates of the above-referenced debtors to which Tomaselli's security interest could attach as proceeds of the disposition of his collateral, it is ORDERED that the Trustee's motion for summary judgment against Joel Tomaselli is GRANTED and Tomaselli's counterclaim is DISMISSED. There remains for decision in this adversary proceeding the question of the claims of defendant, Union National Bank, against the funds held by the Trustee.