72 F.3d 129
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 In the Matter of KELVIN PUBLISHING, INC., Debtor.
John KELVIN and Barbara Kelvin, Appellants,
v.
AVON PRINTING CO., INC., Appellee.
 No. 94-1999.
 United States Court of Appeals, Sixth Circuit.
 Dec. 11, 1995.
 
 Before KEITH, JONES and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 John and Barbara Kelvin appeal an award of sanctions against them for violation of the cash collateral provisions of the Bankruptcy Code, 11 U.S.C. Sec. 363. For the following reasons, we reverse the award and remand for further proceedings.
 
 
 2
 * Kelvin Publishing, Inc., filed a Chapter 11 bankruptcy petition on September 18, 1990. Forty-five percent of the company was owned by John Kelvin, its president; and forty-five percent by his wife Barbara, the company's Vice President and General Manager. Avon Printing Co., Inc. was a secured creditor with an interest in the company's accounts receivable and proceeds. Despite reorganization, the company was unable to continue in business, and converted its petition to Chapter 7 on August 7, 1991.
 
 
 3
 During its unsuccessful reorganization, the company acted as a debtor in possession. It negotiated with Avon to spend certain assets in which Avon had a security interest ("cash collateral"),[1] the use of which, without the consent of Avon or the court, was prohibited by the Bankruptcy Code. Avon agreed to the use of a portion of the cash collateral between September 24, 1990 and December 24, 1990, and the bankruptcy court issued an order enforcing the parties' agreement. After the agreement expired, however, Kelvin Publishing did not stop spending cash collateral. In their defense, the Kelvins allege an oral continuation of the earlier cash collateral agreement. Two facts support their claim: Mr. Kelvin made at least one payment to Avon; and, despite regular communications with the company, including receipt of its monthly financial statements, Avon did not immediately object to the company's expenditures.
 
 
 4
 On December 7, 1991, Avon moved that the bankruptcy court hold the Kelvins in civil contempt for violation of the court's order permitting the use of cash collateral thru December 24 (and impliedly forbidding it thereafter). A hearing was held on December 13. Present were a lawyer for Avon, a lawyer for Kelvin Publishing, Mr. Kelvin, acting as his own counsel, and Mrs. Kelvin, who sat in the audience section of the courtroom and did not participate. After listening to arguments, the court held that the Kelvins could not be found in contempt of its cash collateral order because the order expired before the challenged expenditures occurred. The court then said that it would decide whether the Kelvins violated the cash collateral provisions of 11 U.S.C. Sec. 363, and award damages if they had. The court stated:
 
 
 5
 I am not so narrow a reader of the process that because we are here on an Order to Show Cause for a violation of the Court Order that I cannot in good conscience and justice find that the same facts amount to a violation of the Code and announce a recovery nonetheless.
 
 
 6
 Upon identifying this issue, the court summarized the legal situation, announced a recess, and outlined points for the parties to address when the proceeding resumed. The court decided to hold a "colloquy" with the parties, hoping to resolve the issue without a "hearing" on the evidence.
 
 
 7
 After the recess and additional argument, the court held that Avon never gave actual consent and that 11 U.S.C. Sec. 363 "was violated." Neither the judge, the lawyers, nor Mr. Kelvin suggested that the Kelvins were not personally liable for the misdeeds of their company. Nor was there a discussion of the standard of care of a debtor in possession as a fiduciary for creditors. The attorney representing Kelvin Publishing, however, did make a vague objection:
 
 
 8
 This is an Order to Show Cause of a violation of a Court Order which expired on December 24th. And even if it's true, at the very best, it's a violation of the Bankruptcy Code, it's not a violation of a Court Order. If I remember my constitutional law course, those are two very distinct, different violations, and I think that procedurally we are not here for the right--even on the right motion.
 
 
 9
 The bankruptcy court did not address this objection. The court ordered the Kelvins to pay an amount equal to the cash collateral wrongly spent. A second hearing, on May 17, 1993, fixed this amount at $40,029.29. The Kelvins moved that the bankruptcy court reconsider, and the court denied the motion. The Kelvins appealed to the district court, and the district court affirmed. On this appeal, the Kelvins allege that: (1) the "sanctions" are beyond the contempt power of the bankruptcy court; (2) there was inadequate opportunity to be heard; (3) the lack of notice violated due process; (4) the failure to involve Mrs. Kelvin in the proceedings violated due process; (5) the court erred when it imposed liability without first determining if a fiduciary duty had been violated; and (6) the court erred in its determination of the amount of cash collateral spent.
 
 II
 
 10
 As an initial matter, it is unclear whether the bankruptcy court has authority to award damages against the Kelvins for breach of the cash collateral provisions of the bankruptcy code. Debtors in possession have a fiduciary duty to act in the interests of the company's creditors. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355, 105 S.Ct. 1986, 1994, 85 L.Ed.2d 372 (1985). If a creditor discovers the improper disposal of cash collateral while a debtor is still solvent, the creditor has some effective remedies. At a creditor's request, a court can issue an order not to spend cash collateral, the violation of which is sanctionable contempt. E.g., In re Etch-Art, Inc., 48 B.R. 143 (Bankr.D.R.I.1985) (debtor must return money that court forbade it to spend). A court can order reimbursement from the principals of a close corporation in their personal capacity, although certain findings should be made to justify piercing the corporate veil. E.g., In re Snider Farms, Inc., 125 B.R. 993, 996-98 (Bankr.N.D.Ind.1991) (ordering CEO to repay creditors for money he spent in violation of court's order). A court also can lift the automatic stay and allow the creditor to recover immediately on an underlying debt. E.g., In re Devers, 759 F.2d 751, 754-55 (9th Cir.1985). If the creditor's collateral is already gone, the court may be able to award the creditor a replacement lien on other assets of the corporation. E.g., In re Aerosmith Denton Corp., 36 B.R. 116, 119 (Bankr.N.D.Tex.1983). If, as is the case with Kelvin Publishing, however, the company is insolvent when the creditor discovers the improper disbursements, the creditor's remedies are not as clear. There are two sets of established possibilities. Either the creditor can move that the principals be held in contempt, or the creditor can sue the principals pursuant to the state's common law.
 
 
 11
 We cannot affirm the judgment against the Kelvins as a proper contempt sanction. There can be no sanction for contempt without sufficiently willful violation of a clear judicial command. In re Jacques, 761 F.2d 302, 305-07, (6th Cir.), cert. denied, 475 U.S. 1044, 106 S.Ct. 1259, 89 L.Ed.2d 570 (1985); Project B.A.S.I.C. v. Kemp, 947 F.2d 11 (1st Cir.1991). And the bankruptcy court expressly held that the Kelvins did not violate its cash collateral order. Avon does not consider the lack of an order a problem: it alleges that the bankruptcy court "found the Kelvins in contempt of its orders and applicable law. " We are not prepared to authorize lower courts to hold litigants in contempt "of law"; and believe that the exercise of such a vague mandate would be well beyond the inherent contempt power of federal courts--a power "to be exercised with great caution." Chamber v. Nasco, Inc., 111 S.Ct. 2123, 2132 (1991) (citing ex parte Burr, 9 Wheat. 529, 531, 6 L.Ed. 152 (1824)).
 
 
 12
 Nor could we affirm the bankruptcy court's award as proper damages for breach of a state law fiduciary duty. There is certainly evidence in the record that the Kelvins self-dealt. They paid themselves salaries, and paid taxes for which they personally would have been liable after liquidation. But the bankruptcy court never determined that a fiduciary duty was breached. It heard no evidence of self-dealing, did not inquire into the Kelvins' precise relationship with Kelvin Publishing, and did not address the good faith defense to suits against corporate officers available to corporate principals under Michigan law. M.C.L. 450.1541a.
 
 
 13
 The only remaining source of authority for the award against the Kelvins is the Bankruptcy Code itself. 11 U.S.C. Sec. 363(c)(2) states:
 
 
 14
 The [debtor in possession] may not use, sell, or lease cash collateral [in the course of business] unless--
 
 
 15
 (A) each entity that has an interest in such cash collateral consents; or
 
 
 16
 (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this title.
 
 
 17
 This section does not mention the possibility of a direct cause of action by creditors against the debtor in possession for recovery of cash collateral wrongly spent. It does allow a creditor to seek an order forbidding the debtor from using cash collateral--if the creditor can show that such an order is necessary to protect its interests. 11 U.S.C. Sec. 363(e). And 11 U.S.C. Sec. 362(d)(1) suggests that violation of the cash collateral provisions can be grounds for partial or full relief from the automatic stay, allowing the creditor immediate access to its security interest. See e.g., Freightliner Market Dev. Corp. v. Silver Wheel Freightlines, Inc., 823 F.2d 362 (9th Cir.1987); In re Rankin, 49 B.R. 565, 568-69 (Bankr.W.D.Mo.1985). Of course, these remedies are little help to creditors who do not recognize a problem until the company's assets are gone.
 
 
 18
 Instead of relying on the cash collateral provision itself, Avon argues that the text of 11 U.S.C. Sec. 105 allows a bankruptcy court to issue whatever orders are necessary to help creditors left holding an empty bag at liquidation.
 
 
 19
 The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.
 
 
 20
 A few bankruptcy courts have agreed with Avon's interpretation of Sec. 105. See In re Prioa, 35 B.R. 385 (Bankr.D.R.I.1983) (sanctioning a debtor for fraud without finding him in contempt or establishing the elements of a state law fraud claim); Midwest Properties No. Two v. Big Hill Investment Co., Inc., et al., 93 B.R. 357 (Bankr.N.D.Tex.1988) (sanctioning CEO and attorney of a close corporation for improper cash collateral expenditures without finding them in contempt); In re Aerosmith Denton Corp., 36 B.R. 116, 119 (Bankr.N.D.Tex.1983) (awarding creditor a replacement lien for cash collateral that debtor improperly spent). But we do not read Sec. 105 as conferring on courts such broad remedial powers. The "provisions of this title" simply denote a set of remedies fixed by Congress. A court cannot legislate to add to them.
 
 
 21
 For the sake of argument, we can grant that 11 U.S.C. Sec. 105 gives bankruptcy courts contempt power. See, e.g., In re Skinner, 917 F.2d 444, 447-50 (10th Cir.1990) (bankruptcy courts have no inherent contempt power, but are given similar powers by Sec. 105); accord In re Ragar, 3 F.3d 1174 (8th Cir.1993); In re Walters, 868 F.2d 665 (4th Cir.1989). Contra In re Sequoia Auto Brokers, Ltd., Inc., 827 F.2d 1281 (9th Cir.1986) (bankruptcy courts have no contempt power). If a statutory provision says that a court may "order the debtor to pay," then the power to punish a violation of the order is necessary and appropriate to "carry out" that provision. But Sec. 363 merely says, "spending cash collateral is illegal." There is no specific authorization to the court to take action.
 
 
 22
 To help courts in determining when a private right of action should be implied from a statutory provision, the Supreme Court has provided certain guidelines. The key case expounding this doctrine is Cort v. Ash:
 
 
 23
 In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted'--that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically of concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?
 
 
 24
 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.E.2d 26 (1975) (citations omitted). Applying the Cort test to 11 U.S.C. Sec. 363, only the first factor favors implying a private right of action. The other three suggest restraint.
 
 
 25
 In regard to the second factor, the Supreme Court has consistently stressed the importance of actual evidence of legislative intent. See e.g., Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S.Ct. 2479, 61 L.E.2d 82 (1979) (Court will not imply cause of action where legislative intent is not clear). The legislative histories of Secs. 105 and 363 contain no indication that Congress thought a direct right of action necessary. Committee reports concerning Sec. 363 paraphrase the text's general prohibition. Report of the Committee on the Judiciary, S.Rep. No. 95-989, 95th Cong., 2d Sess. 56, 1978 U.S.C.C.A.N. 6301 ("a trustee may not ..."). However, these reports contemplate a hearing at the beginning of the reorganization process, at which cash collateral rights are fixed by the parties and the bankruptcy judge--not an action after liquidation. Report of the Committee on the Judiciary, H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 345, 1978 U.S.C.C.A.N. 6446. In addition, Congress provided a direct right of action for violation of the automatic stay at 362(h) in the 1984 amendments to the code. Pub.L. 98-353, Sec. 304. Despite making minor changes to other parts of the cash collateral rule in the same 1984 amendments, Congress did not add a similar express right of action to Sec. 363.
 
 
 26
 Considering the third Cort factor, a cause of action might be implied if the only other choice would be to render the cash collateral rule a nullity. But the cash collateral provision of the code works fairly well without a direct cause of action. If a creditor or the court fears that cash collateral will be improperly spent, the debtor can be ordered not to spend it. There is no evidence that such orders are hard to come by. If the debtor then violates the order, the debtor, and possibly its principals, can be ordered to repay in a contempt proceeding. One might argue that these procedures are unnecessary rigmarole, but there are reasons why the Bankruptcy Code should require an actual order, not merely reliance on the statute. The aim of the code is not to forbid the expenditure of cash collateral altogether--reorganization would rarely be possible if the use of cash collateral was illegal. Rather, the aim of the Code is to have the parties and the court reach an early agreement on an appropriate level of cash expenditures. If we interpret the code as Avon suggests, only the debtor in possession would have an incentive to bargain about the level of cash expenditures. The creditor would not be better protected with an agreement than it would be without one--a strategic situation that could encourage exactly the sort of vague, arguably non-mutual "understandings" that gave rise to the current dispute. On the other hand, when interpreted not to provide a direct cause of action, the code creates an incentive for creditors to reach an agreement or to seek an appropriate order pursuant to Sec. 363(e). In short: the code encourages creditors to make their needs and expectations known earlier, and to take a more active part in monitoring the proceedings.
 
 
 27
 The fourth factor of the Cort test considers the consequences of replacing state common law with a court's interpretation of a federal statute. Bankruptcy is an area of federal concern, and federal law preempts state law to the contrary. In re Mankin, 823 F.2d 1296 (9th Cir.), cert. denied, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1987). But state law determines the basic relationship between creditor and debtor, fiduciary and beneficiary. Matter of Elcona Homes Corp., 863 F.2d 483 (7th Cir.1988); Justice v. Valley Bank, 849 F.2d 1078 (8th Cir.1988). Generally, federal courts should presume that Congress did not intend to replace viable state law with federal law. Thompson v. Thompson, 484 U.S. 174, 179-80, 108 S.Ct. 513, 518-20, 98 L.Ed.2d 512 (1988) (refusing to imply right of action under federal Parental Kidnapping Prevention Act). Congress can overcome this presumption with a clear statement. 484 U.S. at 183. And a compelling federal interest or need for uniformity can overcome the presumption even if Congress was silent. E.g., Dice v. Akron, Canton & Youngstown R.R., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952) (purposes of federal statute require federal common law rule that modifies state law). In this case, however, neither a clear statement to override state law nor a federal interest that conflicts with state law exist.
 
 III
 
 28
 For these reasons, we are unconvinced of the bankruptcy court's authority to award sanctions against the Kelvins. We are nevertheless prepared to remand the case to the bankruptcy court for further argument on this difficult issue. The dispositive issue for this appeal is the abbreviated notice and casual proceedings by which the court imposed liability on the Kelvins under this novel, and arguably impermissible, cause of action. Notice and opportunity to be heard constitute the basic elements of procedural due process. Yellow Freight System v. Reich, 27 F.3d 1133, 1140 (6th Cir.1994). It is clear that the Kelvins received adequate notice of some of the facts that were in dispute, and that they understood Avon's general allegation that they spent cash collateral without consent. But in some cases procedural due process can also require adequate notice of the legal theory under which the plaintiff or the court is proceeding. Cf. Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed.2d (1944) (in criminal actions, "[n]o principle of due process is more clearly established than the notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge....").
 
 
 29
 The Kelvins came to court expecting to respond only to the order to show cause why they should not be held in contempt. That order did not mention Sec. 363. The Kelvins believed (correctly, as it turned out) that they had a good defense to the contempt charges made. The Kelvins had no reason to believe that either they or the company would have to answer for a completely different theory of liability. The deficiency proved prejudicial because of the novel nature of the theory under which the court eventually sanctioned the Kelvins. There may be defenses to such an action, such as the state law business judgment rule; and there certainly are difficult legal questions about the new action's existence and scope. It was error to expect a litigant to grasp and effectively dispute these issues without more notice than the bankruptcy court provided the Kelvins during the abbreviated proceedings below. Cf. In re Linkous, 990 F.2d 160 (4th Cir.1993) (party to bankruptcy court must have reasonable notice of important legal issues court will address--the party cannot be expected to anticipate unusual departures from the announced subject matter); Registration Control Sys., Inc. v. Compusystems, Inc., 922 F.2d 805, 808 (Fed.Cir.1991) (under Fed.R.Civ.P. 7(b) a motion must be particular enough that the opposing party can comprehend the basis for it and respond appropriately).
 
 
 30
 We REVERSE and REMAND for further proceedings consistent with this opinion.
 
 
 
 [1]
 "Cash collateral" is defined at 11 U.S.C. Sec. 363(a). It includes the debtor's most liquid assets: "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents."