**In re INTEGRATED HEALTH SERVICES, INC., et al., Debtors.**

**FSQ, INC., f/k/a Five Star Quality Care, Inc., et al., Plaintiffs,**

v.

**Integrated Health Services, Inc., et al., Defendants.**

**Bankruptcy No. 00–00389.**
**Adversary No. 02–05193.**

United States Bankruptcy Court, D. Delaware.

Dec. 30, 2003.

Alfred Villoch, III, Edmon L. Morton, James L. Patton, Joel A. Waite, Joseph M. Barry, Maureen D. Luke, Robert S. Brady, Sharon M. Zieg, Young, Conaway, Stargatt & Taylor LLP, Francis G.X. Pileggi, Fox, Rothschild, O'Brien & Frankel, Ian Connor Bifferato, Bifferato, Bifferato & Gentilotti, J. Kate Stickles, Saul, Ewing LLP, Megan Nancy Harper, Landis, Rath & Cobb LLP, Michael G. Busenkell, Morris, Nichols, Arsht & Tunnell, William Pierce Bowden, Ashby & Geddes, Wilmington, DE, Arthur Steinberg, New York City, for debtors.

Don A. Beskrone, Office of the U.S. Trustee, Wilmington, DE, U.S. Trustee.

Anthony M. Saccullo, Charlene D. Davis, Christopher A. Ward, GianClaudio Finizio, The Bayard Firm, Stephanie Ann Fox, Steven K. Kortanek, Klehr, Harrison, Harvey, Branzburg & Ellers, Wilmington, DE, for Official Committee of Unsecured Creditors.

Jeremy W. Ryan, Mark Minuti, Tara L. Lattomus, Saul Ewing LLP, Wilmington, DE, for plaintiff.

Matthew J. Troy, U.S. Department of Justice, Civil Division, Washington, DC, for U.S. Dept. of Health and Human Services.

## MEMORANDUM OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion to Dismiss filed by the United States Department of Health and Human Services ("HHS") for failure to state a claim upon which relief may be granted with respect

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

to certain Counts of the Complaint filed by Five Star Quality Care, Inc. ("FSQ") ("the Complaint") and lack of subject matter jurisdiction over Counts VII and VIII. After considering the arguments presented by both parties, we conclude that the Motion must be granted for the reasons set forth below.

## I. FACTUAL BACKGROUND

On February 2, 2000, Integrated Health Services, Inc., IHS Licensees, and CCA of Midwest, Inc. (collectively "the Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code. On or about April 12, 2000, the Debtors filed a Motion for approval of a settlement agreement ("the FSQ Settlement") between the Debtors and FSQ. The FSQ Settlement provided for the transfer of certain leasehold and security interests in certain health care facilities ("the Transfer Facilities") from the Debtors to FSQ and its licensees.

The United States, acting on behalf of HHS and the Environmental Protection Agency, filed an objection to the FSQ Settlement, asserting that the Debtors could not convey their interests in the Transfer Facilities while continuing to maintain and bill under their Medicare Provider Agreements. The objection was resolved through a stipulation ("the Stipulation") which provided for an orderly transfer of the Medicare Provider Agreements to FSQ without a gap in the reimbursement of Medicare expenses. The Stipulation further provided that a cure payment would be made by FSQ to the United States for all existing financial defaults under the Provider Agreements. The United States waived any other claims it had against the Debtors with respect to the Transfer Facilities except claims under the False Claims Act. With the objection of the United States resolved, the FSQ

Settlement was approved by Order dated July 7, 2000.

Pursuant to the FSQ Settlement, the Debtors entered into a Management Agreement with FSQ on July 10, 2000. The Management Agreement acknowledged that the Debtors held licenses to operate the Transfer Facilities and provided that the Debtors would retain ultimate control and direction of those facilities until FSQ received state and federal licenses ("the Transition Period"). The Management Agreement further provided that any monies received by the Debtors for Medicare-covered services at the Transfer Facilities during the Transition Period would be forwarded by the Debtors to FSQ.

On February 5, 2003, the Debtors filed a Disclosure Statement relating to their Joint Plan of Reorganization ("the Disclosure Statement"). The Disclosure Statement outlined an additional settlement ("the U.S. Agreement") resolving disputes between the Debtors and HHS relating to many of the Debtors' other facilities. The U.S. Agreement also resolved claims filed by the United States Department of Justice against the Debtors and their affiliates for (1) alleged violations of Medicare regulations and the False Claims Act in the approximate amount of $41 million ($123 million in treble damages) and (2) $140 million in contractual indebtedness to HHS arising from the Debtors' purchase of First American Health Care of Georgia, Inc. Pursuant to the U.S. Agreement, the federal government was to receive a payment of $19,100,000 for claims arising under the False Claims Act, a portion of which was to be set off against underpayments due by the United States to the Debtors.

The U.S. Agreement was approved pursuant to the Order confirming the Debtors' Plan of Reorganization. The Plan also provided for the transfer of substantially

all of the Debtors' remaining facilities to Abe Briarwood Corporation and/or its designee. With the approval of the Plan, the Debtors were left with few remaining liquid assets. As a result, the $19.1 million claim of HHS has been (or will be) satisfied by the set-off against amounts due to the Debtors from their operation of the Transfer Facilities during the Transition Period.

On March 17, 2003, FSQ filed the Complaint against HHS and the Debtors, in which FSQ contends that HHS owes the Debtors (and the Debtors owe FSQ) payment for services rendered at the Transfer Facilities for the Transition Period.

In Count I, FSQ seeks enforcement of the Approval Order, which provides that the Debtors are to remit to FSQ any payments received by them for services rendered at the Transfer Facilities during the Transition Period. In Count II, FSQ asserts that it is owed proceeds from account receivables generated by its management and funding of the Transfer Facilities.[2] In Count IV, FSQ asserts that HHS breached the Stipulation by participating in the U.S. Agreement. In Count V, FSQ asserts that HHS was unjustly enriched by the U.S. Agreement because it was relieved of its obligation to reimburse the Debtors for services rendered by FSQ during the Transition Period. In Count VII, FSQ asserts that HHS induced a breach of the Debtors' fiduciary duties, because the FSQ Settlement required the Debtors to hold any and all proceeds in trust for FSQ's benefit. In Count VIII, FSQ asserts that HHS intentionally interfered with its contractual relations with FSQ and the Debtors by inducing the Debtors to breach their obligations to FSQ through the U.S. Agreement.

On April 21, 2003, the United States filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. First, the United States asserts that the Stipulation bars all Counts against it in the Complaint. Second, the United States contends that the Court lacks subject matter jurisdiction over Counts VII and VIII of the Complaint because the Defendant is shielded from these Counts through sovereign immunity. The parties have fully briefed these issues.

## II. *JURISDICTION*

This Court has jurisdiction to determine whether sovereign immunity bars Counts VII and VIII pursuant to 11 U.S.C. § 106(a)(2) and has jurisdiction over Counts I, II, IV and V pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(B), (C), (I) & (O).

## III. *DISCUSSION*

### A. *Sovereign Immunity*

HHS contends that the Court lacks subject matter jurisdiction over Count VII (inducing a breach of fiduciary duties) and Count VIII (intentional interference with contractual relations) because sovereign immunity shields it from liability.

Sovereign immunity generally provides that the United States may not be sued without its consent. *See, e.g., United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). As an agency of the United States, HHS is afforded sovereign immunity. *FDIC v. Meyer,* 510 U.S. 471, 474, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Any waiver of sovereign immunity must be strictly construed in the government's favor. *United*

---

**2.** Counts III and VI do not implicate HHS and thus are not addressed by its Motion.

*States v. Nordic Village, Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). The plaintiff bears the burden of proof in establishing waiver. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000).

### 1. *Waiver of Sovereign Immunity under 11 U.S.C. § 106.*

FSQ asserts that section 106(a) abrogates HHS's sovereign immunity. In 1994, Congress amended section 106 with the "intention to abrogate sovereign immunity from bankruptcy causes of action for both the United States and the states, as to both nonmonetary and monetary judgments, except punitive damages."[3] *Liebersohn v. IRS (In re C.F. Foods, L.P.)*, 265 B.R. 71, 84 (Bankr.E.D.Pa.2001) (quoting *Field v. Montgomery County (In re Anton Motors, Inc.)*, 177 B.R. 58, 63 (Bankr.D.Md.1995)). The pertinent provisions of section 106(a) provide:

> Sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
> (1) Sections 105, ...363, ...365, ... [and] 1146 of this title....
> (5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

11 U.S.C. § 106(a).

It is uncontested that HHS actively participated in the Debtors' Chapter 11 case by filing it's Objection to the FSQ Settlement, entering into the Stipulation, receiving a cure payment from FSQ, filing multiple proofs of claim against the Debtors, and agreeing to the U.S. Agreement. Based on this participation, FSQ contends that section 105, as incorporated in section 106(a), provides a sufficient basis for the abrogation of HHS's sovereign immunity. Furthermore, FSQ notes that because both the Approval Order and Management Agreement were entered by this Court under its authority pursuant to sections 105, 363, 365 and 1146 of the Bankruptcy Code, HHS waived its sovereign immunity.

HHS asserts, however, that section 106(a)(5) expressly states that it does not create a substantive cause of action. *See, e.g., United States v. Braeview Manor (In re Braeview Manor, Inc.)*, 268 B.R. 523, 527 (N.D.Ohio 2001) (noting that absent some non-bankruptcy waiver of sovereign immunity, the United States may not be sued merely because it files a proof of claim); *see also Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1388 (11th Cir.1996); *Field v. Montgomery County*, 177 B.R. at 64–66. In fact, section 106(b) provides that a governmental unit that files a proof of claim waives its sovereign immunity only with respect to a claim that is property of the estate and arose out of the same transaction or occurrence. 11 U.S.C. § 106(b).

■ While section 106(a)(1) suggests that certain title 11 statutory provisions abrogate sovereign immunity, we conclude that none of the provisions on which FSQ relies provide the basis for the claims asserted in Counts VII and VIII. Counts VII and VIII are tort claims founded, not on the Bankruptcy Code, but on common law. Therefore, we conclude that section 106 does not constitute a waiver of the government's sovereign immunity as to those Counts. *See, e.g., Hassett v. BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 757 (S.D.N.Y.1994) (stating that section 105 does not empower the court to create a cause of action otherwise unavailable under the Bankruptcy Code); *Kelvin*

---

**3.** FSQ does not request punitive damages against HHS.

*v. Avon Printing Co., Inc. (In re Kelvin Publ'g Inc.)*, No. 94–1999, 1995 WL 734481, at *3, 1995 U.S.App. LEXIS 36993, at *9 (6th Cir. Dec. 11, 1995)(stating that section 363 "does not mention the possibility of a direct cause of action by creditors against the debtor in possession for recovery of cash collateral wrongly spent").

■ Furthermore, even if we were to conclude that HHS waived its sovereign immunity by participating in the bankruptcy case and filing claims against the estate, we must still conclude that we lack jurisdiction over Counts VII and VIII. Section 106(b)'s waiver of sovereign immunity is limited to counterclaims that arose out of the same transaction or occurrence that are property of the estate. *See* 11 U.S.C. § 106(b). In this case, the Debtors are not suing HHS under any of their agreements with HHS. Rather FSQ is suing HHS for interfering with FSQ's agreement with the Debtors. Since Counts VII and VIII are not counterclaims by the estate against HHS, we conclude that they do not involve property of the estate.

■ FSQ's reliance on section 105 as "providing a fully sufficient basis for invoking an abrogation of sovereign immunity" is also inappropriate. The First Circuit has held that "[t]he authority bestowed [under section 105] may be invoked only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an *identifiable right* conferred elsewhere in the Bankruptcy Code." *Jamo v. Katahdin Federal Credit Union (In re Jamo)*, 283 F.3d 392, 403 (1st Cir.2002) (emphasis added).

As we found above, Counts VII and VIII do not allege a violation of any substantive provision of the Bankruptcy Code. No provision of the Code states a cause of action in tort against the government. FSQ provides no basis for its argument that sections 363, 365, and 1146 support the causes of action articulated in Counts VII and VIII. These sections lack any language to suggest they support tort claims against the United States and FSQ offers no case law to support its argument. Thus, we conclude that HHS' participation in the Stipulation or this bankruptcy case did not constitute a waiver of its sovereign immunity with respect to the tort claims raised in Counts VII and VIII.

### 2. *Federal Tort Claims Act*

■ Because Counts VII and VIII sound in tort law and HHS' sovereign immunity was not otherwise waived pursuant to the Bankruptcy Code, these Counts are subject to the provisions of the Federal Tort Claims Act ("FTCA"). *See* 28 U.S.C. §§ 2671, *et seq.* (2003); *see also Franklin Sav. Corp. v. United States (In re Franklin Sav. Corp.)*, 296 B.R. 521, 528–29 (Bankr.D.Kan.2002) (holding that tort claims against the United States are subject to the provisions of the FTCA). The FTCA permits tort suits against the United States "to mitigate unjust consequences of sovereign immunity from suit." *Feres v. United States*, 340 U.S. 135, 139, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

■ While section 2680 of the FTCA provides exclusions to its general waiver of sovereign immunity, courts are bound to apply such exclusions strictly in the government's favor. *See, e.g., Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Section 2680(h) expressly states that sovereign immunity is not waived with regard to "claim[s] arising out of... interference with contract rights."

■ Counts VII and VIII are both claims alleging that HHS interfered with FSQ's contractual rights. Section 2680 of the FTCA provides that sovereign immunity is not waived with respect to such suits. Accordingly, this Court lacks subject matter jurisdiction over Counts VII and VII.

*Dupree v. United States,* 264 F.2d 140, 142–44 (3d Cir.1959) (federal courts lack jurisdiction over tort claims for interference with contract).

### B. *Failure to State a Claim*

HHS also contends that FSQ has failed to state a claim upon which relief may be granted under Rule 12(b)(6) as to the other Counts of the Complaint because the Stipulation bars these claims.

To grant a motion to dismiss under Rule 12(b)(6), the movant must establish that no facts exist which would support a claim against it. *See, e.g., Wisniewski v. Johns– Manville Corp.,* 759 F.2d 271, 273 (3d Cir. 1985). The court is required to accept all factual assertions in the light most favorable to the non-moving party. *See, e.g., Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). The court need not determine whether the plaintiff will prevail, but whether the plaintiff can prove any set of facts entitling him to the relief sought. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

Here, FSQ asserts that HHS' actions, in entering into the U.S. Agreement, violated paragraph 3 of the Stipulation which states:

> [N]otwithstanding the assumption and assignment of a Medicare Provider Agreement, any claim of Medicare, the applicable fiscal intermediary, or HHS against any Debtor relating to or arising under such assumed and assigned Medicare Provider Agreement arising prior to the Effective Date is cured and released and each of the IHS Entities and HHS waive their respective rights to assert the right to further payments from the other, as the case may be, for underpayments or overpayments relating thereto; and each of SNH, IHS and HHS will consider all cost reporting periods under each Medicare Provider

Agreement prior to the Effective Date to be fully and finally closed in accordance with all applicable laws.

(Stipulation at ¶ 3).

FSQ's assertion that the Stipulation was breached by the U.S. Agreement is untenable. Paragraph 11 of the Stipulation specifically provides that "[t]his Stipulation is not intended to constitute a release, waiver or compromise of any claims against [the Debtors] under the False Claims Act." In the U.S. Settlement, the Debtors and HHS settled alleged violations under the False Claims Act (amounting to approximately $123 million) for the payment of $19.1 million. Since paragraph 11 expressly excepted such claims from the provisions of the Stipulation, the U.S. Agreement which settled these claims did not violate the Stipulation.

While the U.S. Agreement effectively ensured that FSQ would not receive any compensation from HHS via the Debtors for services rendered during the Transition Period, such an outcome does not violate the terms of the Management Agreement. Section 2.8(b)(I) of the Management Agreement provides:

> With respect to all such Post–Effective Time Receivables with respect to any Facility that are owed by a Medicaid program or Medicare program or other federal or state programs and that are payable under the existing Provider Agreements of any Licensee, Servicer shall endorse and deposit into the Licensee bank account for such Facility under the name and control of the Licensee for such Facility, any and all monies, checks, drafts or other instruments or items *received* as payment for such Government Receivables.

(Management Agreement at ¶ 2.8(b)(I) (emphasis added).) Thus, the Management Agreement provides that FSQ is only

entitled to monies *received* by the Debtors, and not monies owed. Not having ever received the alleged underpayments, because of the setoff of the False Claims Act claim against them, the Debtors did not breach their obligations to FSQ.

Therefore we conclude that FSQ has failed to state a cause of action under Counts I, II, and IV because the Stipulation excluded these actions.

 We similarly conclude that Count V (Unjust Enrichment) also fails to state a cause of action. Unjust enrichment may only be found where there is no written agreement binding the parties. *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir.1987). In this case there was a written agreement and, consequently, no cause of action for unjust enrichment can be stated.

## III. *CONCLUSION*

For the reasons set forth above, we grant HHS's Motion to Dismiss for failure to state a claim upon which relief may be granted as to Counts I, II, IV and V, and for lack of subject matter jurisdiction as to Counts VII and VIII.

An appropriate Order is attached.

### ORDER

AND NOW this **30th** day of **DECEMBER 2003**, upon consideration of the Complaint filed by Five Star Quality Care, Inc. ("FSQ") and the Motion to Dismiss filed by the United States Department of Health and Human Services filed in Response thereto, it is hereby

**ORDERED** that the Motion of the United States Department of Health and Human Services to Dismiss the Complaint Against it is **GRANTED.**