MICHAEL, District Judge.
 

 This case is before the court on an appeal from the decision of the district court which upheld a bankruptcy court ruling. The issue presented is whether cash proceeds generated under a pre-bankruptcy petition contract for the supply of coal, which proceeds are received after the bankruptcy petition is filed, are subject to a pre-petition security interest in the contract and its proceeds.
 

 The case comes before us on stipulated facts. Briefly stated, the appellee (hereinafter “Slab Fork”) was brought into bankruptcy court by United Virginia Bank, and several other secured creditors (hereinafter “UVB”) on an involuntary petition filed on 14 March 1983 under Chapter 7 of the Bankruptcy Code. Shortly thereafter, the case was converted to a Chapter 11 bankruptcy proceeding.
 

 For a number of years before the filing of the involuntary petition, Slab Fork had been party to a contract with Armco, Inc., under which Slab Fork sold coal that it had mined to Armco. This apparently was a profitable contract, and at the time the bankruptcy petition was filed, Armco was indebted to Slab Fork in an amount in excess of $900,000. This amount was paid by Armco and was considered by the Bankruptcy Court to be subject to UVB’s pre-pe-tition security lien. UVB thus received the benefit of that payment.
 

 Apparently because the supply contract was profitable, Slab Fork, having shut down its own coal mining operation, made an agreement with Maben Coal Company (hereinafter “Maben”) to mine and supply coal to Armco for the account of Slab Fork. Under this arrangement, the original contract with Armco remained in effect. Arm-co apparently continued to pay Slab Fork, which in turn paid Maben for supplying coal to Armco. Slab Fork took the position that the cash thus generated'post-petition was not covered by UVB’s security interest. UVB then filed in the bankruptcy court a motion to prohibit the use of “excess” cash collateral, that is, the net cash receipts of Slab Fork from the post-petition coal shipments after the payment of appropriate expenses, including payment to Ma-ben. Based upon a rather generalized application of § 363 of the Bankruptcy Code, the bankruptcy court held that the post-petition payments did not constitute cash collateral under § 363.
 

 
 *1190
 
 On appeal from the bankruptcy court’s decision, the district court affirmed, holding that although the post-petition receipts fell within the provisions of § 552 of the Bankruptcy Code, the post-petition proceeds were property acquired post-petition and thus were not subject to any security lien arising from the pre-petition agreement. However, in what apparently was the basic underpinning of the opinion below, the District Court further held that depriving Slab Fork of these receipts would seriously undermine the rehabilitative purposes of the Bankruptcy Code.
 

 The District Court correctly held below that the matter was regulated by § 552(b) of the Bankruptcy Code. That section provides that:
 

 ... if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds ... of such property, then such security interest extends to such proceeds ... acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law...
 

 11 U.S.C. § 552(b) (1984). This provision, by its very terms, governs the present case. In addition, there exist no non-bankruptcy laws which would supercede § 552(b), or which would render it inapplicable to the present case.
 

 We disagree with the District Court’s ruling that the post-petition cash receipts were not subject to UVB’s pre-petition security interest, for several reasons. First, it is undisputed that the shipping of coal by Maben to Armco post-petition was done pursuant to and in performance of the original supply contract between Armco and Slab Fork. It is similarly undisputed that the payment for the coal received by Arm-co post-petition was the payment called for under the same contract between Slab Fork and Armco. It is likewise undisputed that the pre-petition lien of UVB clearly covered the contract
 
 and such proceeds
 
 as might be derived from that contract.
 

 These facts are nearly identical to the facts in
 
 In Re Sunberg,
 
 729 F.2d 561 (8th Cir.1984), in which the Eighth Circuit Court of Appeals held that the post-petition proceeds of a contract were subject to a pre-petition security interest. In
 
 Sunberg,
 
 several farmers had entered into a payment-in-kind agreement with the United States Department of Agriculture, under which the farmers received cash or crops in return for agreeing to maintain their farm land, but to leave it fallow. Payments made under the payment-in-kind program were used to secure a pre-petition loan from the Production Credit Association. The Production Credit Association had obtained a security interest in those payments before the filing of petitions in bankruptcy against the farmers. Based upon these facts, it was argued that the payments made under the payment-in-kind program after the commencement of the bankruptcy cases were in fact property acquired after the commencement of those bankruptcies, and therefore were not subject to the Production Credit Association’s lien. In its opinion, the Eighth Circuit stated:
 

 The Sunbergs attempt to avoid the lien on their PIK [payment-in-kind] benefits by characterizing those benefits as property acquired after the commencement of their bankruptcy case under 11 U.S.C. § 552(a) (1982). If PCA’s [Production Credit Association’s] security interest covered the PIK contracts and the proceeds of pledged collateral prior to the Sunbergs’ petition in bankruptcy, however, the proceeds of those contracts realized after the petition would continue to be encumbered absent a bankruptcy court order to the contrary based on the equities of the particular case.
 
 Id.
 
 § 552(b).
 

 729 F.2d at 562. The court in
 
 Sunberg
 
 thus determined, as Slab Fork correctly notes in its brief, that the rights to the payments-in-kind represented general intangibles in existence before the bankruptcy petitions were filed and were thus subject to the creditor’s pre-petition security interest.
 

 
 *1191
 
 Applying this reasoning to the present case, the rights under Slab Fork’s contract with Armco were likewise intangible rights, and were subject to UVB’s lien before the filing of the bankruptcy petition. It is true that coal had to be supplied to Armco by or for Slab Fork before any right to payment arose, but that is true for all the payments under the contract, whether generated pre-petition or post-petition. No change in the right to payment under the Armco contract was brought about by the filing of a bankruptcy petition, where the underlying asset and all proceeds therefrom were subject to a valid pre-petition security interest. This case thus falls squarely within the reasoning of
 
 Sunberg,
 
 and we adopt and apply the Eighth Circuit’s holding in
 
 Sunberg
 
 to the present case.
 

 On a second point, Slab Fork argues, and the court below held, that the proceeds in question were not “cash collateral” as that term is defined in § 363(a) of the Bankruptcy Code. That contention, however, does not find support in the Bankruptcy Amendment and Federal Judgeship Act of 1984. In the 1984 Act, Congress provided a statement of what constituted “cash collateral”. That statement, contained in an addition to § 363(a), says that cash collateral “includes the proceeds, products, offspring, rents or profits of property subject to a security interest as provided in § 552(b) of this title, whether existing before or after the commencement of a case under this title ...” Pub.L. 98-353, § 442(a)(2). This additional language clearly indicates Congress’ intent as to the scope of “cash collateral” and to include in that definition circumstances such as those existing in the present case.
 

 Notwithstanding our decision today, it should be noted that § 552(b) gives the bankruptcy court considerable latitude in applying pre-petition security interests to post-petition proceeds. As evidenced by the final clause in § 552(b), a bankruptcy court may choose not to apply a pre-petition security interest to post-petition proceeds “based on the equities of the case.” It appears clear from the legislative history related to § 552 that Congress undertook in that section to find an appropriate balance between the rights of secured creditors and the rehabilitative purposes of the Bankruptcy Code. The latitude afforded to the bankruptcy court seems to this court to indicate that such a balancing of interests was intended in the framing of § 552. In this case, the record does not reflect adequately the various equitable considerations which may bear on this question, and in any event such a determination should more properly be made in the first instance by the Bankruptcy Court.
 

 For the reasons stated, the judgment of the court below is reversed, and the case is remanded to the district court for further remand to the bankruptcy court, for such proceedings as may be appropriate in accordance with the provisions of § 552(b) and with this opinion.
 

 REVERSED AND REMANDED.