In re William R. GRANDA and Carol A. Granda d/b/a Granda Construction d/b/a Keepsake Village, Debtors.

**MARINE BANK, Movant,**

**v.**

**William R. GRANDA and Carol A. Granda d/b/a Granda Construction d/b/a Keepsake Village and William Pineo, Trustee, Respondents.**

**Bankruptcy No. 91–00849E.**
**Motion Nos. 91–1824, LCB–1.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 15, 1992.

William Pineo, Meadville, Pa., trustee.

Lawrence C. Bolla and Arthur Martinucci, Erie, Pa., for Marine Bank.

Christopher D. Ferry, Meadville, Pa., for debtors.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

Marine Bank has filed a motion for relief from the automatic stay, seeking to pursue an account receivable of the Debtor. The account receivable was generated by the postpetition efforts of the Debtor, in performance of a contract which was entered into prepetition. Marine Bank had a valid and enforceable security interest in the Debtor's accounts receivable, prepetition.

The Marine Bank argues that its security interest is not impaired by the filing of the bankruptcy and that, therefore, it should be permitted to proceed to collect the amount due it from the Debtor's postpetition receivables.

At the time the Chapter 7 bankruptcy was filed, no work had been done under the contract. The contract dated October 4, 1991 required the Debtor to provide the labor and material to build an airport building for a contract price of $168,000; Debtor was a subcontractor; Wood Gravel Company was the prime contractor; the owner was the City of Meadville.

The Marine Bank cites us to *United Virginia Bank et al. v. Slab Fork Coal Co.*, 784 F.2d 1188 (4 Cir.1986), wherein it was held that the profits generated under a prebankruptcy contract for supply of coal were subject to a prepetition security interest in the contract and its proceeds, even though the funds were received postpetition. The Court did not allow the lien to be affixed to those portions of the sales proceeds which were necessary to expend in the performance of the contract.

In other words, the lien did not reach the gross proceeds of the coal supply contract. It reached only the net proceeds, or what we might call the intrinsic value of the contract. The contract had intrinsic value because the supply contract locked the buyer into a price at which any investor could make a profit by engaging and paying others to perform the work of mining and delivery.

The Debtor testified that on the date of bankruptcy (October 28, 1991), the contract had no value; that the next lowest bidder was $14,000 higher; that he personally worked 8 hours per day, 6 days per week, for 7 months on the job as carpenter, mason, laborer and supervisor of two labor employees; that the cost of journeyman carpenters and masons would exceed the $25,000–$30,000 personal earnings realized by him on the job; that anyone bidding on the job would have to either supply personal skilled labor or pay cash for skilled labor; that no other contractor could afford to undertake the work at the contract price; and that it was valuable to him because it gave him employment. There was no testimony to the contrary and we deem that testimony to have been credible.

The Trustee had abandoned the contract as having no value to the estate.

We conclude that the contract had no intrinsic value when the bankruptcy was

filed on October 28, 1991 and therefore, there is no value upon which Marine Bank can have a lien. Its motion will be refused.