In re PATIO & PORCH SYSTEMS, INC., Debtor.

Bankruptcy No. 95–1–5399–DK.

United States Bankruptcy Court, D. Maryland.

March 25, 1996.

Lawrence S. Jacobs, Rockville, MD, for Movant Patio Rooms Corp.

Lawrence F. Regan, Jr., Rockville, MD, for Debtor.

Fritz H. Schneider, Baltimore, MD.

### MEMORANDUM OPINION

DUNCAN W. KEIR, Bankruptcy Judge.

Presently before the court is the Motion to Prohibit the Use of Cash Collateral of Patio Rooms Corporation ("Creditor" or "Movant") ("Creditor's Motion" or "Movant's Motion"), which raises the issue of whether postpetition payments made under prepetition home improvement contracts are subject to a prepetition security interest in a debtor's accounts receivable. Because several material issues have not been addressed by the parties, an evidentiary hearing will be scheduled by the court and noticed to the parties.

### FACTS

Patio & Porch Systems, Inc. ("Debtor") is engaged in the business of constructing patio and porch enclosures. Movant is a former trade supplier of Debtor. In February 1991, Movant and Debtor entered into a series of notes, totaling $322,643.27, secured by, among other things, Debtor's "account receivables" (sic) and the proceeds derived therefrom. Debtor filed a Chapter 11 bankruptcy petition on September 1, 1995, and scheduled Movant as a secured creditor with an interest in Debtor's accounts receivable, calculated by Debtor to be worth $10,270 as of the date the petition was filed. Debtor's Schedule B, Item 15. Debtor also sched-

uled, among its assets, $183,969 in pending contract claims, that appear to have been entered into prepetition, as contingent and unliquidated claims rather than as accounts receivable.[1] Debtor's Schedule B, Item 20.

Creditor asserts that payments from these contract claims are proceeds of Debtor's accounts receivable and, therefore, are subject to its security interest. Creditor further asserts that if the payments are subject to its security then the payments constitute cash collateral.

During the pendency of the bankruptcy, Debtor, acting as debtor in possession, has used the contract payments that have been made as operating funds without seeking prior court approval. Based on Debtor's use of the funds, Creditor has filed the instant Motion objecting to Debtor's use of the contract payments as cash collateral under 11 U.S.C. § 363(c)(2). Creditor asserts that it has not consented and that the court has not authorized the use of the contract payments as cash collateral by the Debtor.

Creditor's Motion seeks to have the court issue an order: (1) prohibiting Debtor's continued disbursement of the contract proceeds as operating funds; (2) requiring that any future proceeds received by Debtor from prepetition contract claims be placed into a segregated account; and (3) requiring Debtor to place into the segregated account funds equal to the amount of any proceeds from the contracts already received by Debtor.

### ANALYSIS

In determining whether the contract payments are subject to Creditor's security interest and constitute cash collateral there are five issues that must be considered:

(1) Did Creditor have a prepetition perfected security interest in Debtor's accounts receivable;

(2) Does Maryland state law create any special bars preventing a contractor from obtaining an interest in a home improvement contract prior to fully performing the contract;

(3) Does a security interest in accounts receivable cover contract claims that have not yet been performed;

(4) Are postpetition payments made on accounts receivable "proceeds" for the purposes of 11 U.S.C. § 552(b);

(5) Does the fact that performance on the contracts may have occurred, partially or completely, postpetition effect any lien Creditor may be entitled to?

I. *Creditor's security interest in Debtor's accounts receivable was perfected prepetition.*

Attached as exhibits to Creditor's Memorandum of Patio Rooms Corporation in Support of its Motion to Prohibit the Use of Cash Collateral ("Creditor's Memorandum") are two financing statements evidencing the perfection of Creditor's security interests in Debtor's "account receivables"; the first financing statement was filed with the Maryland State Department of Assessments and Taxation on February 21, 1991 and the second was filed with the clerk of the Circuit Court for Montgomery County on February 25, 1991. These exhibits evidence that Creditor has perfected a security interest in Debtor's accounts receivable both centrally and locally. Md.Ann.Code, Com.Law I, § 9–401 (1992). Debtor has offered no evidence from which a contrary conclusion might be even inferred. Moreover, Debtor, by scheduling Creditor as having a security interest in Debtor's accounts receivable, has admitted the existence of Creditor's valid security interest in these accounts.

II. *Maryland state law does not bar a contractor from having an interest in the proceeds of a home improvement contract prior to the contractor's full performance under the contract.*

One of the arguments raised by Debtor in asserting that Creditor does not have a security interest in the contract claims is that Title 8 of Maryland's Business Regulations Article and other state regulations implicitly

1. Debtor's stated reason for the classification is that, "[t]hese do not constitute accounts receivables because the contracting party agrees to pay the Debtor–In–Possession as the Debtor–In–Possession completes the work." Debtor's Schedule B, Item 20.

bar a home improvement contractor from obtaining an interest in the proceeds of a home improvement contract prior to the contractor's fully performing under the contract. Debtor's Memorandum Regarding Contested Cash Collateral Motion ("Debtor's Motion"), at p. 2–3. Despite the creativity of Debtor's argument the court finds no basis for recognizing such a prohibition.

Title 8 of the Maryland Business Regulation Article governs the licensing and conduct of home improvement businesses such as Debtor. Md.Ann.Code, Bus.Reg., Title 8 (1992). Sections 8–501(c)(1)(vii) and 8–501(c)(2) of Title 8, which Debtor cites to, require that certain disclosures be put into a home improvement contract, including the description of any collateral pledged by the *homeowner* for payment under the contract.

The statute contains no requirements concerning a contractor's ability to pledge the account under the contract to secure a contractor's borrowings from a third party. Debtor also relies upon § 8–617, which limits the ability of a contractor to collect a deposit, after a contract is signed, to one third of the amount due under the contract. Again this statutory section does not impede the contractor's interest in the contract's account, nor does it affect a pledge of accounts by the contractor.

The pledging of the security interest in debtor's account would not alter the contract rights by and between the homeowner and the debtor concerning performance and payment. The above discussed sections of the Maryland Business Regulation Article were designed to protect homeowners by requiring disclosures in home improvement contracts and preventing disproportionate deposits from being obtained prior to performance. A pledge by the contractor of the right to future payments to be earned by future performance would not impose a greater burden upon the homeowner and is not prohibited by these sections.

*III. A security interest in general accounts receivable covers contract claims, whether or not the contract has been performed.*

■ A second argument that Debtor raises in support of its position that it did not have an interest in the payments on the contracts until the contracts were performed relies upon the decision of the Maryland Court of Appeals in *Finance Co. of America v. U.S. Fidelity and Guaranty Co.*, 277 Md. 177, 353 A.2d 249, 254 (1976), wherein the court held that contract rights did not become "accounts" [2], until the work under the contract was performed and the entitlement to receive the proceeds came into existence. Based on the holding in the Finance Co. case Debtor argues that because it did not have an interest in the payments on the contracts until the contracts were performed, Creditor's security interest in Debtor's accounts receivable could not have attached to the payments prior to Debtor's performing under the contract, which did not occur prepetition.

What Debtor fails to recognize is that the court in *Finance Co. of America* was interpreting Maryland's pre–1980 amendments to § 9–106 of the U.C.C. That version of the U.C.C. recognized "contract rights" and "accounts" as being separate interests. A "contract right" meant "any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper", and an "account" was defined as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper."

The current version of § 9–106 of the U.C.C. adopted in Maryland, combines these two interests under the common term "account":

"Account" means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, *whether or not it has been earned by performance.*

"Account" is defined as right to payment for goods sold or leased or services rendered; the ordinary account receivable.
(emphasis added).

**2.** The Official Comment to Ann.Code of Md., Com.Law I, 9–106 defines the term "account" as being synonymous with the term "account receivable":

Md.Ann.Code, Com.Law I, § 9–106 (1992) (emphasis added). Moreover, the Official Comment to § 9–106 expressly provides that "the same rules apply to accounts both before and after performance." As noted in *Industrial Bank of Wash. v. Techmatics Technologies, Inc.*, 763 F.Supp. 629, 637 (D.D.C.1991), *aff'd*, 955 F.2d 764 (1992) prior to 1980 Maryland recognized a distinction between an "account" and a "contract right". This distinction was eliminated by Maryland's adoption of the revised § 9–106 of the U.C.C., which eliminated a separate definition for a "contract right" and incorporated the previous interest known as a "contract right" into the interest known as an "account" by adding the final clause in the current definition. *Id.; see also In re SRJ Enterprises, Inc.*, 150 B.R. 933, 936 (Bankr. N.D.Ill.1993); *In re Nendels–Medford Joint Venture*, 127 B.R. 658, 668 (Bankr.D.Or. 1991).

Under the amended definition of "account" it appears that *Finance Co. of America* is no longer good law for the proposition for which Debtor cites it. Therefore, Creditor's security interest in Debtor's accounts receivable included the right to receive payments on the contract claims. See *United Virginia Bank v. Slab Fork Coal Co. (In re Slab Fork)*, 784 F.2d 1188 (4th Cir.), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986); *In re Aerosmith Denton Corp.*, 36 B.R. 116 (Bankr.N.D.Tex.1983). Creditor's rights in the accounts receivable became fixed upon the filing of Debtor's bankruptcy petition and, thereafter, payments made on the prepetition contracts were subject to Creditor's security interest. See *James Cable Partners L.P. v. Citibank (Matter of James Cable Partners, L.P.)*, 141 B.R. 772, 777 (Bankr. M.D.Ga.1992) (postpetition payments from customers who had signed subscription agreements before bankruptcy petition was filed are subject to prepetition security interest in accounts receivable); *In re Airport Inn Assoc., Ltd.*, 132 B.R. 951, 955 (Bankr. D.Colo.1990); *In re Hugo*, 58 B.R. 903, 907 (Bankr.E.D.Mich.1986).

The fact that Debtor may not have begun performance on the contracts until after filing for bankruptcy is immaterial in determining the extent of Creditor's security interest. The only fact that is significant is that the contracts were entered into prepetition.

IV. *Postpetition payments made pursuant to prepetition contracts constitute "proceeds" of Creditor's security interest in Debtor's accounts receivable and are an exception to 11 U.S.C. § 552(a) under 11 U.S.C. § 552(b).*

Just because the postpetition contract payments were subject to Creditor's security interest in Debtor's accounts receivable does not necessarily mean that Creditor's lien survives Debtor's bankruptcy filing. Section 552 of the Bankruptcy Code addresses the treatment of property acquired by a debtor after filing for bankruptcy that otherwise would be subject to a security interest by a third party. 11 U.S.C. § 552.[3]

"Section 552(a) provides the general rule that: postpetition property of the debtor or estate is not subject to any lien resulting from any prepetition security agreement ... Section 552(b) provides an exception for liens resulting from any prepetition security agreements which cover 'proceeds, product, offspring, rents, or profits.' "

*In re Rumker*, 184 B.R. 621, 624 (Bankr. S.D.Ga.1995) (quoting *Financial Security Assurance, Inc. v. Tollman–Hundley Dalton, L.P.*, 165 B.R. 698, 701 (N.D.Ga.1994)).

The purpose of this section is to further the "fresh start" goals of the Bankruptcy Code by not allowing prepetition liens to encumber property acquired by the debtor postpetition. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *In re Bumper Sales, Inc.*, 907 F.2d 1430, 1436 (4th Cir.1990). The burden of establishing that an exception to 11 U.S.C. § 552(a) exists is upon the lienholder. *In re*

---

3. Section 552(a) of the Bankruptcy Code provides that:

property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

*Sherwood Ford, Inc.,* 125 B.R. 957, 962 (Bankr.D.Md.1991), *aff'd,* 1992 WL 295951 (D.Md.1992); 4 *Collier on Bankruptcy,* § 552.01, at 552–5 (15th ed. 1996).

Thus, under the general rule of 11 U.S.C. § 552(a) a prepetition security interest in property of the debtor does not extend to property acquired postpetition. However, "proceeds" of Creditor's prepetition collateral will be subject to the creditor's lien, unless the court orders otherwise.

■ What constitutes "proceeds" is determined by state law. *In re Bumper Sales, Inc.,* 907 F.2d 1430, 1437 (4th Cir.1990). In Maryland, "[p]roceeds" includes whatever is received upon the sale, exchange, collection, or other disposition of collateral or "proceeds." Md.Ann.Code, Com.Law I § 9–306(1) (1992) (emphasis added). In considering whether a "security agreement extends to post-petition proceeds of prepetition collateral" the Fourth Circuit has stated that § 9–306(3) of the U.C.C. should be applied. *In re Bumper Sales, Inc.,* 907 F.2d at 1438. Md. Ann.Code, Comm.Law I § 9–306(3) provides:

> The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected 10 days after receipt of the proceeds by the debtor unless any of the following apply:
> (b) A filed financing statement covers the original collateral and the proceeds are identifiable cash proceeds.

■ In this instance, Creditor's original collateral was Debtor's accounts receivable, which were subject to a perfected security agreement, as discussed above. The payments made under the contracts were proceeds of the accounts receivable for purposes of 11 U.S.C. § 552(b). *In re Bumper Sales, Inc.,* 907 F.2d 1430, 1437 (4th Cir.1990) ("funds received ... from the ... collection of accounts are cash proceeds"); *In re Airport Inn Assoc., Ltd.,* 132 B.R. 951, 957 (Bankr.D.Colo.1990) ("[P]ayment on an account receivable is proceeds of the account receivable for purposes of § 552(b).") (quoting *Investment Hotel Properties,* 109 B.R. 990, 995 (Bankr.D.Colo.1990)); *Matter of*

*Barkley,* 31 B.R. 924, 927 (Bankr.W.D.Mich. 1983) ("[c]hecks received for the rendering of services are proceeds of accounts receivable ..."). Consequently, Creditor's perfected security interest in Debtor's accounts receivable did continue postpetition as to the proceeds of the accounts (i.e. the contract payments).

This conclusion is consistent with the Fourth Circuit's decision in *In re Slab Fork Coal Co.,* 784 F.2d at 1189, wherein the court considered the issue of

> whether cash proceeds generated under a pre-bankruptcy petition contract for the supply of coal, which proceeds are received after the bankruptcy petition is filed, are subject to a prepetition security interest in the contract and its proceeds [ ].

The court in *Slab Fork* held that the cash proceeds generated both prepetition and post-petition under a prepetition contract were subject to a prepetition security interest, irrespective of 11 U.S.C. § 552. Id. at 1190.

The only case the court is aware of that has refused to recognize the continuation of a prepetition security interest in the proceeds of an account postpetition is *In re John A. Rumker,* 184 B.R. 621 (Bankr.S.D.Ga.1995). Rumker is distinguishable from *Slab Fork* since it dealt with the specific issue of whether a creditor may assert a security interest in a debtor's postpetition wages payable pursuant to a prepetition employment contract.

In *Rumker,* the court, relying upon *In re Miranda Soto,* 667 F.2d 235 (1st.Cir.1981), concluded that wages earned by a debtor postpetition under a prepetition employment contract were not "proceeds" of debtor's accounts receivable, which were subject to a prepetition security interest. Id. at 627–28. This position has been recognized in the Fourth Circuit. *Seaboard Small Loan Corp. v. Ottinger,* 50 F.2d 856 (4th Cir.1931); *see also Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *In re Scott,* 142 B.R. 126 (Bankr.E.D.Va.1992).

■ The only fact Creditor is required to establish that it has not is the requirement in section 9–306(3)(b) that the proceeds it seeks to retain a lien upon be "identifiable". Md.Ann.Code, Com.Law I, § 9–306(3)(b)

(1992). Just because the proceeds may have been commingled in other bank accounts does not prevent the funds from being "identifiable". "Identifiable" is not a term defined under the U.C.C. or Maryland law. However, it is well settled that:

> [w]here a secured party's proceeds are commingled in a general bank account, the secured party has successfully identified the proceeds by tracing them into the account or accounts into which the deposit was made. At that point, a presumption arises that general payments are first made from general funds and that the security interest is only eroded as the balance in the account drops below the amount of proceeds deposited.

*Brown & Williamson Tobacco Corp. v. First Nat'l Bank of Blue Island,* 504 F.2d 998, 1002–04 (7th Cir.1974). Determining whether the proceeds Creditor seeks to retain a security interest in are "identifiable" is a question of fact Creditor will be required to establish at the evidentiary hearing.

■ In proving that the payments were "proceeds" Creditor is not required to address section 9–306(4) of the Maryland Commercial Law Article. The limits applied under Md.Ann.Code, Com.Law I, § 9–306(4) (1992) have been held to be "per se inapplicable" as that section "governs the extent of a creditor's interest in commingled proceeds only up to and including the instant of commencement of the insolvency proceedings." *In re Bumper,* 907 F.2d 1430, 1438 (4th Cir.1990) (quoting *In re Hugo,* 58 B.R. 903, 907 (Bankr.E.D.Mich.1986)); *In re Aerosmith Denton Corp.,* 36 B.R. 116, 118 (Bankr. N.D.Tex.1983). Because the instant matter only involves the receipt of proceeds postpetition and does not involve proceeds generated prepetition, § 9–306(4) of the U.C.C. need not be considered.

*V.   The extent of Creditor's security interest in postpetition proceeds may be reduced based upon the "equities of the case".*

■ If Creditor can establish that the proceeds from the accounts are identifiable

then its security interest in those funds will not be extinguished under 11 U.S.C. § 552(a). However, 11 U.S.C. § 552(b) grants the court broad equitable powers in determining the extent of the security interest Creditor may be allowed to maintain postpetition. This "equities of the case" provision is intended to prevent secured creditors from receiving windfalls and to allow bankruptcy courts broad discretion in balancing the interests of secured creditors against the general policy of the Bankruptcy Code, which favors giving debtors a "fresh start". *See Slab Fork,* 784 F.2d at 1191; *In re Photo Promotion Assoc., Inc.,* 53 B.R. 759, 763 (Bankr.S.D.N.Y.1985). Using this provision courts have invalidated prepetition security interests as to postpetition proceeds based on the equities of the case. *See In re Granda,* 144 B.R. 697, 698 (Bankr.W.D.Pa.1992); *Airport Inn Assoc., Ltd.,* 132 B.R. 951, 959 (Bankr.D.Colo.1990). As the House Report to the most recent amendments to 11 U.S.C. § 552 notes, 11 U.S.C. § 506(c)[4] permits a broad range of operating expenses to be deducted from pledged revenues, including those that may be subject to postpetition security interests. H.R.Rep. 103–834, 103rd Cong., 2nd Sess. 27–29; 140 Cong.Rec. H10768 (Oct. 4, 1994), *as reported in Norton Bankr. Law and Practice* 2d, p. 671 (1995–96 ed.).

In *In re Granda* a security interest in debtor's accounts receivable had been perfected prepetition, however, all of the work on the contracts was performed postpetition. *Granda,* 144 B.R. at 698. Considering to what extent the postpetition proceeds should be subject to the security interest, the court, interpreting *Slab Fork,* held that the prepetition lien reached only the net proceeds, or the intrinsic value, of the contract. *Id.* at 698. The court reasoned that the value of the accounts receivable was only what the contract would be worth to the estate if the trustee was able to sell it.

In the case at bar the court has neither established that Movant is entitled to main-

---

4.   11 U.S.C. § 506(c) provides:
    The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

**576**

tain its prepetition lien to the postpetition proceeds, nor has the court been presented with sufficient evidence to weigh the equities between the parties. As a result, the court will defer in deciding whether to apply the equitable provision of 11 U.S.C. § 552(b) pending the outcome of the evidentiary hearing.

Accordingly, this court will conduct an evidentiary hearing upon the remaining issues, *i.e.,* does Debtor hold identifiable proceeds of the accounts pledged to Creditor, and should this court limit Creditor's post-petition lien upon proceeds of pledged pre-petition contracts based upon the "equities of the case."