**In re CYBRIDGE CORPORATION, Debtor.**

**Andrea Dobin, Trustee, Plaintiff,**

**v.**

**Presidential Financial Corporation of Delaware Valley, Defendant.**

**Bankruptcy No. 01–62337 RTL. Adversary No. 02–5378.**

United States Bankruptcy Court, D. New Jersey.

Feb. 18, 2004.

Andrea Dobin, Valerie A. Hamilton, Sterns & Weinroth, Trenton, NJ, for Plaintiff.

Stephen Packman, Jerrold Kulback, Archer & Greiner, Haddonfield, NJ, for Defendant.

## OPINION

RAYMOND T. LYONS, Bankruptcy Judge.

This matter comes before the court on cross-motions for summary judgment. Before bankruptcy, the Debtor, Cybridge Corporation, entered into a lending agreement with the defendant, Presidential Financial Corporation of Delaware Valley ("Presidential"). Cybridge granted Presidential a security interest in its accounts receivable and virtually all its other assets. Cybridge filed a petition under chapter 11 of the Bankruptcy Code. Presidential was not listed as a creditor on the Debtor's schedules and had no knowledge of Cybridge's bankruptcy filing. Presidential continued to advance loans to Cybridge and collect the Debtor's accounts receivable postpetition. The Trustee seeks to recover the funds collected by Presidential relating to the Debtor's postpetition consulting services either through the avoidance provisions of 11 U.S.C. § 549 or the turnover provisions of 11 U.S.C. § 542.

Presidential argues that the transfer of postpetition accounts receivable by payment from Cybridge's customers to Presidential should be unavoidable as a transaction in the ordinary course of business authorized under § 363 [1] or because it was a good faith transferee who took for value and without notice of Cybridge's bankruptcy. The court rejects Presidential's ordinary course argument since § 364 specifically requires court approval for secured borrowing, indicating such transactions are

---

1. All references to sections are to the Bankruptcy Code, 11 U.S.C. § 101, et seq.

not ordinary. As to good faith, § 542(c) protects a good faith transferor (i.e., the Debtor's customers) not a transferee such as Presidential.

The Trustee may avoid the transfer of the Debtor's postpetition accounts receivable under § 549 and recover the value from Presidential under § 550. Presidential is entitled to a credit against the recovery for all money it gave back to the Debtor in postpetition loans. Since the amount of the credit exceeds the amount of the avoidable postpetition transfers, the net recovery is zero.

### FACTUAL BACKGROUND

Cybridge filed a voluntary petition under chapter 11 on October 31, 2001. The case was converted to chapter 7 on April 3, 2002 upon the motion of the Official Committee of Unsecured Creditors. Andrea Dobin was appointed chapter 7 Trustee.

Cybridge's business consisted of placing software development personnel with its customers. The consulting agreements between Cybridge and its customers provided that Cybridge would find independent contractors to perform services as specified by the customer in a project request detailing the nature of the project, the duration, the location and the fees.

The agreements between Cybridge and the independent contractors provided that they were not employees of Cybridge, and that Cybridge had "no right to and shall not interfere" with the work performed by the independent contractors. Cybridge's earnings stemmed from the difference between the contract price paid by Cybridge's customers and the price Cybridge paid to the independent contractors.

The defendant, Presidential, is an accounts receivable lender. In June 2000, Presidential began providing accounts receivable financing to Cybridge. Pursuant to the terms of their agreement, Presidential would advance to Cybridge up to eighty percent of the eligible accounts receivable. In exchange, Cybridge granted Presidential a first priority security interest in "inventory, furniture, fixtures, equipment, contract rights, chattel paper, notes receivable, instruments, drafts, general intangibles and all receivables of the Debtor, and proceeds thereof." Presidential perfected its security interest by filing a UCC–1 financing statement. As required by the loan agreement, Cybridge instructed customers to send payments directly to Presidential. Upon receipt of payment from Cybridge's customer, Presidential would deposit the funds into its bank account. Presidential's bank would sweep the funds from Presidential's account to apply to Presidential's debt.

Presidential was not listed on the Debtor's schedules and had no notice of the Debtor's bankruptcy filing. After bankruptcy, Presidential unwittingly continued to advance money to Cybridge and to collect payments from Cybridge's customers. Presidential became aware of Cybridge's bankruptcy filing by a telephone call from the Trustee on April 19, 2002, after the case was converted to chapter 7. The Trustee then sent written notice of the bankruptcy filing to Presidential by letter dated May 1, 2002.

At the time of the Debtor's filing on October 31, 2001, the loan balance with Presidential was $123,724.46. In the ensuing two months, Presidential collected $152,803.75 in payments from the Debtor's customers relating to consulting services performed prepetition.[2] From December 20, 2001 until May 8, 2002, Presidential

---

**2.** The Trustee has not sought to avoid these transfers, apparently conceding Presidential's lien on the Debtor's prepetition accounts receivable.

collected $163,847.00 in payments from Cybridge's customers for services rendered by independent contractors postpetition. Presidential advanced to Cybridge $192,200.00 in new, postpetition loans.

Ms. Dobin filed a motion for turnover seeking to recover $163,847.00 collected by Presidential relating to postpetition consulting services. In response, Presidential filed a motion seeking *nunc pro tunc* approval of the financing arrangement between Cybridge and Presidential. The court denied Presidential's motion for *nunc pro tunc* approval of the financing agreement. The Trustee's turnover motion was denied on procedural grounds since an action to recover estate property must be brought by adversary proceeding. Fed. R. Bankr.P. 7001(1). Accordingly, the Trustee initiated this adversary proceeding seeking to avoid the postpetition transfer of estate property under 11 U.S.C. § 549, or in the alternative, the turnover of funds collected by Presidential pursuant to 11 U.S.C. § 542. Since the parties have both moved for summary judgment they agree there is no genuine issue as to any material fact. Fed. R. Bankr.P. 7056.

### JURISDICTION

The court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(a), (b) and (e); 28 U.S.C. § 157(a) and (b)(1); and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding concerning the determination of a lien and the turnover of property of the estate under 28 U.S.C. § 157(b)(2)(E) and (K).

### DISCUSSION

In her complaint the Trustee seeks to recover from Presidential payments made postpetition by the Debtor's customers for consulting services performed postpetition under two counts. The first alleges that the postpetition transactions are avoidable by the Trustee pursuant to § 549. The second asserts that the funds collected by Presidential postpetition are subject to turnover under § 542. If the Trustee is successful on either of these issues, then the court must analyze whether Presidential's lien extends to the proceeds of postpetition accounts receivable in accordance with § 552.

### A. 11 U.S.C. § 549 Avoidance of Postpetition Transfers

Section 549 affords a trustee broad authority to avoid transfers of a debtor's property that occur after the filing of the bankruptcy petition. It provides:

Postpetition transactions

(a) Except as provided in subsections (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

The drafters of the 1978 Code gave much thought and debate to § 549 and enacted it with the intention of striking a balance between the rights of creditors to share pro rata in the debtor's property and preserving the rights of those parties conducting business with a debtor without knowledge of the bankruptcy filing. Section 549(a)(2)(B) provides two exceptions to the trustee's broad avoidance powers: transfers authorized by the Bankruptcy Code or transfers approved by the court. The burden of proof is on Presidential to demon-

strate the validity of postpetition transfers. Fed. R. Bankr.P. 6001.

### Ordinary Course

■ The first exception is a transfer authorized by the Bankruptcy Code, for example, ordinary course transactions under § 363(c)(1). Section 363 provides, in relevant part:

> If the business of the debtor is authorized to be operated ... the trustee [3] may enter into transactions ... in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

Presidential argues that since the transactions were within the ordinary course of Cybridge's business, they are authorized pursuant to § 363 and are not avoidable. In, *In re Roth American*, 975 F.2d 949 (3d Cir.1992), the Third Circuit addressed § 363 and adopted the horizontal test and the vertical test for establishing that a transaction was within the ordinary course of business. The horizontal test analyzes the custom in the debtor's industry, and whether or not the transactions are commonly undertaken within that industry. The vertical test analyzes whether or not the transaction was a common occurrence between the debtor and the transferee. In *Roth American* the Third Circuit held that some transactions are so extraordinary that they cannot be within the ordinary course.

The court finds that the secured lending transactions between Cybridge and Presidential are just so extraordinary that they cannot be classified as within the Debtor's ordinary course of business. Cybridge is in the business of entering into personal service contracts. Secured borrowing is not the essence of Cybridge's business. Its relationship with Presidential predated the bankruptcy by little more than a year. There is no evidence as to Cybridge's borrowing history other than with Presidential nor as to industry practices in general. It is undoubtedly true that virtually all businesses rely on credit; that does not lead to the conclusion that secured borrowing is ordinary course.

To the contrary, postpetition secured lending is specifically addressed in § 364 entitled **Obtaining Credit,** and accordingly, the transactions at issue must fall within § 364 to escape § 549's avoidability. This specific section governs over the more general sections.[4] Subsection (a) allows the trustee to obtain unsecured credit to operate the business. Sections (b) and (c) deal with secured credit and permit it only after notice and a hearing. To hold that postpetition lending could fall within the scope of § 363 would evade the notice and hearing requisites of § 364 regarding postpetition secured financing. Congress intended that postpetition secured lending could only be approved in accordance with the provisions of § 364 and not § 363.

### Approved Transfer

A second exception to § 549's avoidance provision is if the transfer has been approved by the court then it is not avoidable by the Trustee. Presidential moved before the court on June 6, 2002 (after the case had been converted to chapter 7) for *nunc pro tunc* approval of postpetition secured lending. The motion was denied

**3.** A debtor in possession in a chapter 11 case has the rights of a trustee. § 1107.

**4.** "It is a commonplace of statutory construction that the specific governs the general...."

*Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

and a motion for reconsideration was also denied. Presidential's appeal of that decision was dismissed upon a finding by the District Court that the order appealed from was not a final order and that Presidential was not yet an aggrieved party.

### Good Faith

■ Presidential argues that the transfer of postpetition accounts receivable by payment from Cybridge's customers to Presidential should be unavoidable because it was a good faith transferee who took for value and without notice of Cybridge's bankruptcy. "Fraud by the debtor and good faith on the part of the transferee are irrelevant to the application of this section." 5 Collier on Bankruptcy, ¶ 549.02 (15th ed. rev.2003) (hereafter "Collier").

Considering the principals of statutory construction, if Congress intended for a good faith recipient of the debtor's personal property to be protected from the avoidance powers, then Congress would have enacted a provision to do so. Section 549(c), for example, protects good faith purchasers of real property who make their purchase without knowledge of the debtor's bankruptcy filing. By providing protection specifically for transferees of real property, Congress intentionally chose not to provide the same protections to transferees of personal property.

Collier gives a thorough explication of the genesis of § 549 in the Bankruptcy Code of 1978. In particular, The Commission on the Bankruptcy Laws of the United States recommended a specific provision regarding postpetition transfers. In its final report the Commission wrote:

> Postpetition transferees giving a reasonably equivalent present value would be protected if the transfer takes place prior to constructive notice or actual knowledge of the case. And if the transferee does not give a reasonably equivalent value, a trans-

feree without actual or constructive notice is protected to the extent of the value give[n]. . . .

> The general thrust of the Commission's recommendation is to protect those dealing with the debtor in good faith. Before there can be total protection, there must be reasonably equivalent present value given. However, if less is given, the transferee is protected to the extent of the present value given.

Report of the Commission on the Bankruptcy Laws of the United States, July 1973, 93d Cong., 1st Sess., House Doc. No. 93–137, Parts I and II; quoted in Collier ¶ 549.LH[3]. Further, Collier writes:

> Most of the Commission proposals were incorporated into the final version of the Bankruptcy Code of 1978, except that the protection of transferees in good faith without knowledge of the bankruptcy is limited in the Bankruptcy Code to transferees of real property whereas the Commission had proposed to extend this protection from avoidance to personal property as well.

*Id.*

Several other provisions of the Bankruptcy Code provide protection for good faith parties without knowledge. For example:

> § 549(b) protects transferees for value in the gap between the filing of an involuntary petition and the order for relief.

> § 550(b) covers immediate and mediate transferees from the initial transferee

> § 542(c) protects good faith transferors

Congress, obviously, recognizes that good faith parties without knowledge deserve special consideration in some circumstances. Congress chose those circumstances. By implication, if Congress failed

to provide protection for certain good faith transferees it did so intentionally. Since Congress chose to protect only good faith transferees of real property under § 549(c) and failed to mention good faith transferees of personal property, it must have intended that postpetition transfers of personal property be avoidable regardless of the knowledge or good faith of the transferee.[5]

None of the exceptions to avoidance in § 549 apply in these circumstances. The Trustee is entitled to avoid the transfer of the Debtor's postpetition accounts receivable to Presidential.

## B.  11 U.S.C. § 542 Turnover

■  Having determined that the Trustee may avoid Presidential's collection of the Debtor's postpetition receivables under § 549, the court need not consider the Trustee's request for a turnover of estate property under § 542 since it is superfluous. Nevertheless, Presidential argues that § 542(c) absolves it from liability. Analysis of that section reveals that Presidential can take no comfort there.

Section 542(c) protects a party from turning over property of the estate where that party had neither actual notice nor actual knowledge of the commencement of the case concerning the debtor and transferred the property in good faith to a party other than the trustee. The protections of § 542(c) stem from the Supreme Court's decision in *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). In *Bank of Marin*, the debtor issued checks prepetition. The payees negotiated the checks postpetition and the bank disbursed the funds. The bank was never notified of the debtor's filing. The

Ninth Circuit, following the language of the Act, found that title vested in the trustee as of the filing of the petition and that the postpetition transfer was invalid against the trustee. *Bank of Marin v. England*, 352 F.2d 186 (9th Cir.1965). On appeal, however, the Supreme Court reasoned that equitable considerations mandated a different result.

> The payee is a creditor of the bankrupt, and to make him reimburse the trustee is only to deprive him of preferential treatment and to restore him to the category of a general creditor. To permit the trustee under these circumstances to obtain recovery only against the party that benefitted from the transaction is to do equity.

*Bank of Marin*, 385 U.S. at 103, 87 S.Ct. 274.

As to the bank that had paid the check, equity would protect the transferor who no longer had possession of the debtor's property. The bank would not be required to give back that which it transferred in good faith. The protection extends to the transferor, but not to the transferee. Turnover could still be sought from the transferee (i.e., the payee of the check). Congress agreed and enacted § 542(c) to codify the Supreme Court's holding. Section 542(c) provides:

> Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor in good faith and other than in the manner specified in section (d) of this section, to an entity other than the trustee,

---

**5.** For a description of the legislative history of the predecessor of § 549 under the Bankruptcy Act of 1898 and the Chandler Amendment see Justice Harlan's dissent in *Bank of Marin*

*v. England*, 385 U.S. 99, 103–111, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966) (Harlan, J., dissenting).

with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.

Presidential asserts that it is protected by § 542(c) because it, in good faith and without knowledge of the Debtor's bankruptcy, negotiated the checks mailed to it from the Debtor's customers and deposited the payments into its bank. The court disagrees. The parties who benefit from § 542(c) in this matter are the Debtor's customers who, without knowledge of the Debtor's bankruptcy, sent their payments to Presidential. In making their payments to Presidential, the Debtor's customers were, in the words of § 542(c), paying a debt owing to the Debtor to an entity other than the Trustee. As such, the Trustee cannot recover the payments from the Debtor's customers, for they already transferred the property to a third party, Presidential. The entities protected from turnover due to the equitable concerns expressed in *Bank of Marin* and codified in § 542(c) are the Debtor's customers, since they no longer have possession of the property of the estate. Presidential, however, as the transferee is the proper party from whom the Trustee can recover the payments. Furthermore, § 549(a)(2)(A) specifically permits avoidance of transfers authorized pursuant to § 542(c) and § 550 allows recovery of the avoided transfer from the initial transferee. Presidential is not protected by § 542(c).[6]

## C. 11 U.S.C. § 552 Presidential's Lien on Postpetition Receivables

■ Outside bankruptcy a secured creditor may obtain a security interest in the borrower's after acquired property. N.J.S.A. 12A:9–204. In this case, Presidential perfected a security interest in Cybridge's accounts receivable accruing after the loan agreement. The Bankruptcy Code alters the law regarding security interests in property acquired postpetition.

Subsection (a) of § 552 titled **Postpetition effect of security interest** provides:

Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

The Debtor's billings for consulting services performed postpetition constitute property acquired by the estate after the commencement of the case. Unless the exception provided in § 552(b) applies, Presidential's prepetition security interest does not attach to postpetition accounts receivable. Section 552(b) provides:

---

**6.** It is possible to treat a secured creditor, such as Presidential as the transferor under § 542(c). For instance, assume a customer of Cybridge made a check payable to Cybridge but mailed the check to Presidential. Exercising its rights as a secured creditor, including a power of attorney granted by Cybridge in the loan agreement, Presidential could negotiate the check. This could be considered a transfer under § 542(c) protecting Presidential as transferor. Of course, by depositing the check in its bank account Presidential would also be the transferee and not protected by § 542(c). Alternatively, Presidential's bank, which swept all deposits to apply against Presidential's line of credit, could be considered the transferee, exposing the bank to liability to the Trustee. This is hardly a result Presidential would desire. Lastly, Presidential's exercise of its rights as a secured creditor in negotiating checks payable to Cybridge could be considered void as a violation of the automatic stay of § 362(a). *40235 Washington Street Corp. v. Lusardi*, 329 F.3d 1076 (9th Cir.2003), David Gray Carlson, *Bankruptcy's Acephalous Moment: Postpetition Transfers Under Bankruptcy Code § 549*, (unpublished article-publication forthcoming)(2004).

(b) (1) Except as provided in section 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Presidential maintains that the postpetition receivables are the proceeds of consulting contracts entered into prepetition to which its security interest attaches. All of the postpetition consulting services provided by independent contractors were pursuant to prepetition consulting agreements between Cybridge and its customers. Presidential had a security interest in all the Debtor's property including contract rights and the proceeds thereof. The postpetition billings by Cybridge represent proceeds of those contract rights. N.J.S.A. 12A:9–102(64)(b). Assuming for the moment that Presidential had a security interest created before commencement of the case, it would attach to the postpetition proceeds of those contracts under § 552(b).

The Trustee points to the last phrase of § 552(b) that allows the court to limit the extent of the lien on postpetition receivables "based on the equities of the case." Other courts have considered this language in connection with executory contracts where the debtor renders further services after bankruptcy. *In re Patio & Porch Systems, Inc.*, 194 B.R. 569 (Bankr. D.Md.1996).

In that case, the debtor was a home improvement contractor. A supplier had taken a security interest in the debtor's accounts receivable including contract rights. At the time of filing bankruptcy, the debtor had several uncompleted home improvement contracts. After bankruptcy the debtor performed further work on the contracts and earned the right to payment. The creditor asserted a lien on these postpetition accounts receivable as the proceeds of the home improvement contracts. The bankruptcy court agreed that the creditor's prepetition lien extended to the receivables generated postpetition, but recognized that § 552(b)

> grants the court broad equitable powers in determining the extent of the security interest [a] creditor may be allowed to maintain postpetition. This "equities of the case" provision is intended to prevent secured creditors from receiving windfalls and to allow bankruptcy courts broad discretion in balancing the interests of secured creditors against the general policy of the Bankruptcy Code, which favors giving debtors a "fresh start".

*Patio & Porch,* 194 B.R. at 575.

The court scheduled a hearing to determine the intrinsic value of the contracts as of the petition date.

In another case, the Fourth Circuit held that although goods needed to be manufactured and delivered postpetition, the secured creditor's lien remained because the price of the coal was determined prepetition, and thus the value of the contracts would not change. *United Virginia Bank v. Slab Fork Coal Co., (In re Slab Fork Coal Co.),* 784 F.2d 1188 (4th Cir.1986). In *Slab Fork,* the court looked to the

intrinsic value of the contract and permitted the secured creditor's lien to reach the gross proceeds of the supply contract.

In a chapter 13 case, where an attorney assigned a security interest in his employment contract, the court held the security interest did not survive the bankruptcy filing because the assignment of future wages creates a bankruptcy lien only where the wages have already been earned by the Debtor. *In re Rumker,* 184 B.R. 621 (Bankr.S.D.Ga.1995).

In a chapter 7 case, the court held a construction contract had no value on the date of the bankruptcy filing because no work had been completed under the contract. *In re Granda,* 144 B.R. 697 (Bankr. W.D.Pa.1992). The work to be performed would be completed solely by the debtor's own manual labor and no other contractor could afford to perform the contract at that price. The contract had value to the debtor only in that it provided him with employment. Additionally, the trustee had abandoned the contract as having no value to the estate.

### Prepetition Loan Satisfied

Despite the parties' arguments, the court finds that § 552(b) does not apply in this case because, by the time Presidential collected any of the Debtor's postpetition receivables, Presidential's prepetition loan had already been satisfied. On the petition date, October 31, 2001, Presidential's loan balance was $123,724.46. Between then and the end of the year Presidential collected $152,803.75 in prepetition receivables [7]—more than enough to satisfy its prepetition debt. With no prepetition debt, there would be no prepetition security interest to attach to the postpetition accounts receivable under § 552(b). Presi-

dential's postpetition loans were not authorized by the court under § 364 and could not be secured by the prepetition loan agreement.

### D. Credit For Payback

If the Trustee were seeking to avoid a postpetition transfer of tangible personal property, her suit would become moot once the property was returned. For example, suppose the debtor had transferred a car to an employee after it filed bankruptcy. If the employee subsequently gave the car back, there would be no need for a Trustee's suit once the employee returned the car. A similar result should follow where the avoided postpetition transfer involves cash. A transferee who receives an avoidable postpetition cash transfer should have no further liability once it gives the cash back.

In this case, Presidential received $167,414.44 in avoidable collections of postpetition receivables. However, Presidential transferred $192,200.00 to the Debtor postpetition in the form of new loans. Cash is fungible. Presidential's postpetition loans were equivalent to giving back the proceeds of the avoidable collection of postpetition receivables. The amount given back to the Debtor exceeds the amount of postpetition receivables collected by Presidential. Thus, the net amount of the avoided transfer is zero.

The Trustee objects to a credit against the recovery and suggests Presidential should be given a chapter 11 administrative claim for its postpetition loans. Allowing Presidential a credit for money given to the Debtor in new, postpetition loans, in effect yields a result advocated by the Commission on the Bankruptcy Law of the United States. "Postpetition transferees

---

**7.** As mentioned above in footnote 2, the Trustee has not sought to avoid Presidential's col-

lection of prepetition accounts receivable.

giving a reasonably equivalent present value would be protected...." Report of the Commission, *supra.* Of course, Congress adopted the Commission's recommendation only for real property, not for personal property. So, is allowing the credit contrary to Congress's intent?

Not necessarily. As stated, cash is fungible and allowing the credit merely recognizes that Presidential has already returned that which the Trustee seeks. Secondly, Presidential's postpetition loans were made to the Debtor in Possession, a fiduciary with all the powers of a Trustee. § 1107(a). Cybridge used the funds to operate its business postpetition, as it was authorized to do. § 1108. The assets removed from the estate by Presidential's collection of postpetition receivables were replenished by postpetition loans.[8]

Lastly, Congress protects good faith purchasers of real property by making such transfers unavoidable. In this case, the Trustee may avoid the collection of postpetition receivables, so Congress's decision not to exempt transfers of personal property is respected. The credit merely recognizes that the estate's property has been restored whether the payback occurs before or after the Trustee commenced suit.

### CONCLUSION

The Trustee is entitled to avoid Presidential's collection of the Debtor's accounts receivable attributable to postpetition consulting services under § 549(a) and recover the value in the amount of $163,847.00 from Presidential under § 550(a)(1). However, Presidential is equitably entitled to a credit for the cash it transferred back to the Debtor in the form of postpetition loans in the amount of $192,200.00. Since the credit exceeds the value of the avoided transfer, the net recovery is zero. Judgment will be entered finding the plaintiff entitled to no recovery.

---

**8.** A credit might not be appropriate in all circumstances. For example, in a chapter 7 case, if new loans were given to a debtor and dissipated, a credit might not be allowed.